STATE ex rel. JEANETTE T. FRYE v. EDMUND W. BAZILLE.[1]

November 28, 1902.

Nos. 13,237—(243).

**Inheritance Tax—Constitution.**

Laws 1901, c. 255, known as the "Inheritance Tax Law," is *held* unconstitutional and void, because it operates unequally as between collateral, and also as between collateral and lineal, descendants. Transfers of property to the former are taxed to the full value, when such value exceeds $5,000, whereas as to lineal descendants the tax is imposed only upon the excess over and above a fixed valuation of $5,000. Drew v. Tifft, 79 Minn. 175, followed and applied.

Petition in the district court for Ramsey county for a writ of mandamus commanding Edmund W. Bazille, judge of the probate court for said county, to proceed with the distribution of the estate of Stina Johnson, deceased, without requiring payment of the so-called inheritance or transfer tax provided for by Laws 1901, c. 255, and to make and enter the final decree requisite therefor. From a judgment entered pursuant to an order, Bunn, J., directing the issuance of a peremptory writ, as prayed, defendant appealed. Affirmed.

[1] Reported in 92 N. W. 415.

*W. B. Douglas*, Attorney General, and *C. W. Somerby*, Assistant Attorney General, for appellant.

*Ambrose Tighe*, for respondent.

*M. B. Koon, James I. Best* and *A. B. Jackson*, by consent filed briefs in behalf of respondent.

BROWN, J.

Mandamus proceedings were commenced in the district court of Ramsey county to compel the probate court to make a final distribution of the estate of Stina Johnson, deceased; that court having refused to do so, except upon payment of an inheritance tax. Judgment was there awarded for the relator, from which appellant, defendant therein, appealed.

The sole question presented for our consideration is the constitutionality of Laws 1901, c. 255, known as the "Inheritance Tax Law." The act was passed subsequent to the decision in Drew v. Tifft, 79 Minn. 175, 81 N. W. 839, and was, in all probability, intended to meet the requirements of the law as there enunciated. The constitution provides:

"There may be by law levied and collected a tax upon all inheritances, devises, bequests, legacies and gifts of every kind and description, above a fixed and specified sum, of any and all natural persons and corporations. Such tax above such exempted sum may be uniform or it may be graded or progressive; but shall not exceed a maximum tax of five per cent."

A general discussion of the validity of legislation of this sort is unnecessary, since in the case just cited the principles applicable to the subject were very clearly and fully discussed in the opinion of Chief Justice START. We have only to determine whether the act under consideration comes within the law as there laid down. It was there held that section 1, article 9, of our constitution, being a provision requiring equality of taxation, applies to inheritance taxes, exactly as it does to taxes on other property, except as therein otherwise expressly provided, and that statutes providing for such taxes, to be valid, must include all inheritances, devises, bequests, and legacies, of every kind and description, including those of both real and personal property, and, further, that they

must be uniform, and apply equally to all persons or corporations, whether collateral or lineal descendants.

The decision covers the law in other respects, but the features just mentioned are alone pertinent to the questions presented in the case at bar. If the act does not operate uniformly and equally as to all persons or corporations, or if it applies solely to personal property, it cannot be sustained. We shall proceed to consider whether it is objectionable on either ground.

Section 1 of the act (that referring to collateral descendants) provides as follows:

"A tax shall be and is hereby imposed upon the transfer of any property, real, personal or mixed, tangible or intangible, over which this state has jurisdiction, or of any interest therein or income therefrom, in trust or otherwise, when the value of such property, interest or income exceeds $5,000, in the following cases: First. When the transfer is by will or by the intestate laws of this state from any person dying, deceased or possessed of the property while a resident of this state. * * * Such tax is also imposed when any person or corporation becomes beneficially entitled in possession or expectancy to any property or the income thereof by any such transfer, whether made before or after the passage of this act. Such tax shall be at the rate of five per cent. of the clear market value of such property, interest or income, except as otherwise provided in the next section: provided, that any estate, property, interest or income, so transferred, that shall be valued at $5,000, or less, shall be exempt from and not subject to the tax hereby imposed."

Section 2 of the act, referring to lineal descendants, provides as follows:

"When such property, interest or income, or any beneficial interest therein, passes by any such transfer to the use of a father, mother, husband, wife, child, brother, sister, wife or widow of a son, or the husband of a daughter, or any child adopted as such, in conformity with the laws of this state, of the decedent, grantor, donor or vendor, * * * or to any lineal descendant of such decedent, grantor, donor or vendor born in lawful wedlock, then such tax shall be at the rate of one per cent. upon the clear market value of the property, interest or income, so transferred, in excess of said sum of $5,000."

That there is a flagrant want of uniformity and equality, not

only as between the collateral and lineal descendants, but also as between collaterals, seems to us beyond controversy. Section 1, relating to transfers to collateral descendants, imposes a tax upon a transfer of any such property, real, personal, or mixed, when the value thereof exceeds $5,000. The contention is (and it is clearly supported by the language of the statute) that the tax there provided for is to be laid upon every transfer which exceeds $5,000 in value; not upon the excess over and above that amount, but upon the whole value where it exceeds $5,000. The constitution authorizes the levy of a tax of this nature upon the excess of an exemption to be fixed at the discretion of the legislature, which was here fixed at $5,000; but the provisions of section 1 clearly impose the tax upon the whole value of the property transferred, where it exceeds the fixed limitation. True, the proviso at the end of the section exempts transfers of $5,000 or less; but if the value of the property transferred should be $5,100, or, in fact, any other amount above $5,000, the tax would be laid upon the whole amount, so that the person receiving less than $5,000 would pay no tax at all, and the person receiving $5,000 and above would pay a tax upon the whole amount. It certainly puts the collateral descendants upon an unfair and unequal basis, and is not in harmony with the requirements of the constitution authorizing such taxation. The proviso cannot be construed to limit the tax to the excess over and above $5,000, for to do so would be a glaring departure from the plain, unambiguous language of the act.

There is also an inequality or lack of uniformity as between collateral and lineal descendants, and one not authorized by the constitution. Section 2, which applies to lineal descendants, clearly comes within the decision in the Drew case, and imposes a tax on the value of property transferred in excess of $5,000, and all transfers of $5,000 and less are exempt from the operation of the act. Not so with section 1, for, as we have pointed out, the tax there imposed is upon the entire transfer of property, if its value exceeds $5,000. Clearly, here is an inequality and discrimination between the collateral and lineal descendants as striking as that between classes of collaterals, which, the Drew case pointed out,

could not be made; and it is so apparent as to need no extended discussion to show it. No rules of statutory construction with which we are familiar will justify a different interpretation.

We are also of opinion that the whole act is vitiated by section 18. While it is not necessary to determine this question, we do so as a guide for future legislation on the subject. This section provides that the words "estate and property," as used in the act, shall be taken to mean the personal property or interest therein of the testator passing or transferred. The contention is made that this was a direct attempt on the part of the legislature to apply the tax to transfers of personal property only, and to exclude transfers of realty. This was one of the principal reasons for overthrowing the act of 1897, which was held unconstitutional in the Drew case. It was there distinctly held that the tax authorized by the constitution must extend to all classes of property, both real and personal. If the legislature intended again to limit the tax to personal property,—and the fair import of this section would seem to sustain the position that it did,—the act cannot stand, within the decision in the Drew case. We construe this section as fixing such a limitation. Perhaps the insertion of the section, or the language making the whole act applicable to personal property, was a mistake on the part of the legislature, but we are not authorized so to hold. The language of the act is explicit, and either means what it says, or it means nothing at all. We have no right to reject it as meaningless, and must give to the language employed its ordinary significance.

Upon both these grounds, the act of the legislature is unconstitutional, and cannot be sustained.

The order is that the judgment appealed from be affirmed.