STATE ex rel. JESSE FOOT v. EDMUND W. BAZILLE.[1]

December 29, 1905.

Nos. 14,636—(214).

**Case Followed.**

Drew v. Tifft, 79 Minn. 175, 81 N. W. 830, 47 L. R. A. 525, 79 Am. St. Rep. 446, construing section 1, art. 9, of the state constitution as modified by the inheritance tax amendment followed and applied.

**Act Valid.**

Chapter 288, p. 427, Laws 1905, imposing a tax upon certain devises, bequests, inheritances, and gifts, *held* a constitutional and valid legislative enactment.

**Classification.**

The classified and progressive features of the statute are in accordance with the general principles of the law on the subject of inheritance taxation, and authorized by the amended constitution.

**Collateral and Lineal Descendants.**

Whether a distinction should be made between collateral and lineal descendants is a matter of legislative discretion, and not a judicial question.

**Ambiguities in Act.**

Certain indefinite and ambiguous provisions of the statute above referred to considered in the light of the general rule that inaccurately drawn statutes will be construed to effectuate the intention of the legislature, and the statute *held* not inoperative or void for the ambiguities referred to.

[1] Reported in 106 N. W. 93.

### Rule of Strict Construction.

The rule of strict construction, ordinarily applied to the operation and effect of a statute imposing a tax upon the citizen and to proceedings thereunder, does not apply to its interpretation.

Appeal by the state from an order and judgment of the district court for Ramsey county, Orr, J., denying the application of the county treasurer for a peremptory writ of mandamus commanding Edmund W. Bazille, as judge of probate for that county, to appoint appraisers to value certain legacies and devises for the purpose of determining the amount of the inheritance tax imposed thereon by chapter 288, Laws 1905. Reversed and remanded for further proceedings.

*Edward T. Young*, Attorney General, for appellant.

*How, Butler & Mitchell*, for respondent.

*A. D. Smith*, by consent of counsel, filed brief in behalf of interested parties.

BROWN, J.

Application was made to the court below, under the provisions of chapter 288, p. 427, Laws 1905, for a writ of mandamus commanding and requiring respondent, as judge of probate of Ramsey county, to appoint appraisers to ascertain the value of certain legacies and devises made by the last will and testament of Paul D. Ferguson, deceased, whose estate was being probated in his court, for the purpose of determining the amount of the inheritance tax imposed by that statute. The application was denied on the ground, in the opinion of the court below, that the statute referred to is unconstitutional and void. Relator appealed.

The sole question presented, aside from certain contentions respecting the interpretation of the statute, is its constitutionality. This statute represents the fourth attempt of our legislature to enact an inheritance tax law. It is, in essential respects, different from prior statutes on the subject, though the main purpose, an inheritance tax, is the same.

The first statute enacted was declared unconstitutional in Drew v. Tifft, 79 Minn. 175, 81 N. W. 839, 47 L. R. A. 525, 79 Am. St. Rep. 446, for the reason, among others, that real property was excluded from its operation, that it exempted certain corporations, prescribed a higher

exemption to lineal than collateral heirs, and did not lay the tax upon the excess of the inheritance or devise above the exemption.

The second (Laws 1901, p. 402, c. 255) was held unconstitutional in State v. Bazille, 87 Minn. 500, 92 N. W. 415, 94 Am. St. Rep. 718, on the ground that it operated unequally as respects the exemption, in that the tax upon collateral heirs was laid on the whole inheritance when it exceeded $5,000, while as to lineals the tax was upon the excess over $5,000. The result was an unwarranted discrimination in the matter of exemption; none being allowed collateral heirs receiving over $5,000.

The third (Laws 1902, p. 43, c. 3) was declared void in State v. Harvey, 90 Minn. 180, 95 N. W. 764, for the reason that it imposed a tax of ten per cent., double that allowed by the constitution.

The Drew case involved a construction of the provisions of our state constitution authorizing this sort of a tax, and also the validity of the statute enacted under it; but the other two cases involved only the statutes there before the court, which were materially different from that now before us, and throw no particular light upon the questions in the case at bar, and are not in point. Upon the construction of the constitution the Drew case is in point, and, as will be presently seen, is decisive of the present case.

We first turn our attention to the contention of respondent respecting the interpretation of the statute. The rules governing courts on this subject are too familiar to require extended discussion or citation of authorities. It may be stated as a cardinal rule, supported by an unbroken line of authorities, that in cases of imperfectly drawn statutes the court, rather than pronounce them unconstitutional and void, will draw inferences from the evident intent of the legislature, as gathered from the whole statute, correcting by intendment technical inaccuracies in expression, and supplying obviously unintentional omissions, that they may be rendered operative and effectuate the legislative will. The rule was applied recently by this court in State v. Bates, 96 Minn. 110, 104 N. W. 709, a case involving the construction of a statute of far greater indefiniteness and uncertainty than the one in the case at bar, and where, to save the statute from total destruction, words which ap-

parently rendered it nugatory and without effect were wholly eliminated therefrom.

The sole purpose of the rules of construction is to ascertain the intention of the legislature, and inartificially constructed statutes, containing ungrammatical expressions or inconsistent provisions, will, if not so vague and indefinite as to render them void for uncertainty, be reduced or extended by intendment to effectuate the legislative intent. State v. Board of Commrs. of Polk County, 87 Minn. 325, 92 N. W. 216; State v. Chicago, M. & St. P. Ry. Co., 38 Minn. 281, 37 N. W. 782; Moody v. Stephenson, 1 Minn. 289 (401); Woodruff v. Town of Glendale, 26 Minn. 78, 1 N. W. 581; McGee v. Board of Co. Commrs. of Hennepin County, 84 Minn. 472, 481, 88 N. W. 6.

Though the statute under consideration is one imposing a tax upon a class of citizens, its interpretation is governed by the general rule just referred to. The rule of strict construction ordinarily applied to the operation and effect of such statutes, and to proceedings thereunder, does not apply. The statute must be given a fair and reasonable construction. State v. Western Union Tel. Co., 96 Minn. 13, 104 N. W. 567; Treat v. White, 181 U. S. 264, 21 Sup. Ct. 611, 45 L. Ed. 853; In re Stewart, 131 N. Y. 274, 30 N. E. 184, 14 L. R. A. 836. With this rule in mind we will examine the various provisions of this statute in connection with the contentions of counsel for the respective parties. The statute is as follows:

Section 1. A tax shall be and is hereby imposed upon all inheritances, devises, bequests, legacies and gifts of every kind and description, of any and all persons and corporations, the value of which exceeds $10,000, and upon such excess only.

Sec. 2. Such tax shall be computed upon the full and true value of such inheritance, devise, bequest, legacy or gift, above such excess, at the following rates, viz.:

1. When such valuation is over $10,000 and less than $50,000, the rate shall be one and one-half per cent. thereof.

2. When such valuation is $50,000 or over, and less than $100,000, the rate shall be three per cent. thereof.

3. When such valuation is $100,000 or over, the rate shall be five per cent. thereof.

The first paragraph of section 2 is rendered ambiguous by the use of the word "excess," immediately preceding the words "at the following rates"; but the use of that particular word in that connection was manifestly not intended, for, if full effect be given it, the whole statute is thereby rendered inoperative. The intention of the legislature, clearly disclosed by the first section, was to lay a tax upon all inheritances and devises in excess of an exemption of $10,000; but the provision now in question purports to lay the tax upon all sums above the excess. The excess being the only thing taxed, it is obvious that the word was inadvertently inserted in this connection. The word "exemption" expresses the undoubted intention of the legislature, and may be supplied by intendment. Properly construed, the section lays the tax upon all inheritances and devises in excess of an exemption of $10,000.

It is also urged that subdivision 1 of this section contains an arbitrary and unfair discrimination in favor of inheritances and devises amounting to less than $10,000, and such as to render the statute violative of the constitution. It will be observed that the statute divides the tax into three classes. The first class includes inheritances or devises between the sums of $10,000 and $50,000; the second, to sums between $50,000 and $100,000; and the third, those above $100,000. Respecting the first class the statute provides that the tax thereby imposed shall be computed upon the full value of the inheritance above the exemption "at the following rates: 1. When such valuation is over $10,000 and less than $50,000 the rate shall be one and one-half per cent. thereof." It is contended that by the language here employed the statute creates an exemption of $20,000 to persons coming within the first class, receiving less than $10,000—in other words, that, unless the inheritance exceeds the sum of $10,000 over and above the previously fixed exemption of $10,000, no tax is imposed at all, while those of this class who receive over $10,000 and less than $50,000 are taxed at the rate there prescribed upon the whole amount; and it is insisted that this is a discrimination between persons of the same class, rendering the statute invalid.

We do not concur in this view. The intention of the lawmakers is here indefinitely expressed. The language is somewhat ambiguous;

but, reading the clause above quoted in connection with the preceding parts of the statute, the intention is clear. The construction contended for by the attorney general, to the effect that the manifest intention was to lay the tax upon all inheritances between the values of $10,000 and $50,000 renders the various provisions of the statute harmonious, and we adopt it. By doing so no violence is done the rules of statutory construction. On the contrary, force and effect is given them, and results in resolving ambiguity and uncertainty into a consistent whole in consonance with the legislative design. ·

We come, then, to the main contention, namely, that the statute violates the constitutional mandate of equality in taxation, and is void. Section 1, article 9, of our constitution provides, so far as here material, that:

> All taxes to be raised in this state shall be as nearly equal as may be: * * * Provided * * * that there may be by law levied and collected a tax upon all inheritances, devises, bequests, legacies and gifts of every kind and description, above a fixed and specified sum, of any and all natural persons and corporations. Such tax above such exempted sum may be uniform, or it may be * * * graded or progressive, but shall not exceed a maximum tax of five per cent.

It is insisted that the proviso authorizing the inheritance tax must be construed in connection with the equality mandate, and that, properly construed, the tax, although it may be graded or progressive, must, as respects graded or progressive features, be made as nearly equal as may be, and that the statute does not conform to this requirement. Counsel contend that this construction is sustained by the Drew case. In this we do not concur.

The history of taxation is, in harmony with all human affairs, one of evolution. Its progress from the earliest times to the present day is one of constant development, in keeping with the advancing intelligence of man, unrolling step by step, with changing economic and social conditions, tardily however, new methods and means of subjecting untaxed property to the tax rolls. Originally public revenue was raised by voluntary contributions from the citizens; later, in response

to appeals and solicitations of the rulers; and finally, when voluntary contributions ceased, as at the present day, by compulsory assessments, enforced by the operation of law. With this latter method came the demand, born of injustice and oppression, for uniformity and equality, and provisions securing it have long been a part of the fundamental law of all democratic forms of government. Formerly tangible property only was taxed. Franchises of corporations, special privileges, and other intangible, yet valuable, property rights, never reached the tax lists. But in more recent times new species of property, "new in kind, unsubstantial in character, vast in extent, enormous in value," have, owing to industrial growth and commercial enterprise, come rapidly into existence (Jaggard, J., in State v. Western Union Tel. Co., 96 Minn. 22, 104 N. W. 567), and methods and means of reaching and subjecting the same to its share of the public burdens have developed and been put into practical operation by the legislatures and courts of this country. Ability or faculty to pay has come to be the test in determining the justness of taxation. It is "not only the basis of taxation but the goal toward which society is steadily working. It lies instinctively and unconsciously at the bottom of all of our endeavors at reform." Seligman, Tax. 72.

The equity and fairness of this theory, in its broadest sense, when we reflect upon the vast fortunes accumulated as the result of especially advantageous opportunities and facilities, not possessed by people in general, is apparent and obvious. It works no injustice or harm to those thus fortunately situated, does not injuriously affect productive or industrial agencies, and relieves in a measure those with lesser opportunities, and those to whom taxation is always an extreme burden. This theory does not, however, harmonize well with a strict application of the fundamental mandate of equality, as applied more particularly to the proportional system of taxation in force in this and other states. We mean by "proportional system" a tax at a fixed and uniform rate, in proportion to the amount of taxable property, based upon a cash valuation; and legislatures and courts have been not a little embarrassed in attempts to apply it.

But an examination of the books discloses that the equality mandate has been expanded and made to yield, from time to time, to new and

97 M.—2

advancing social and economic conditions. The general principle is retained, but is applied with less rigor and strictness. In our own state it has been enlarged, extended, and departed from by the people. As it originally stood, our constitution in this respect prevented the assessment of property for local improvements, and it was amended by expressly excepting such assessments from the equality rule. Bidwell v. Coleman, 11 Minn. 45 (78); Sperry v. Flygare, 80 Minn. 325, 83 N. W. 177, 49 L. R. A. 757, 81 Am. St. Rep. 261. The equality mandate applies as a general rule to taxes upon property only, and is generally held by the courts of this country to have no application to inheritance taxation, because a tax of that nature is not one upon property but upon the right of succession or inheritance (27 Am. & Eng. Enc. [2d Ed.] 338), though in this state it was held to apply to inheritance taxes in Drew v. Tifft, supra, and also to a similar statute in State v. Gorman, 40 Minn. 232, 234, 41 N. W. 948, 2 L. R. A. 701, precisely as in other taxation, except as otherwise provided by the amendment under consideration.

The statute before the court in the Gorman case prescribed, as a condition to the settlement of estates of deceased persons, the payment of what is known in England and other European countries as "probate duties"; that is, a tax graded in accordance with the valuation of the estate to be probated. The court there held that the statute violated the equality provisions of the constitution and was consequently void. Duties or taxes of the character of those imposed by that statute are sustained by nearly all the courts of this country, upon the principle that it is not a tax upon property and the equality rule does not apply. The question before us is whether the people, by the enactment of the amendment under consideration, intended to the extent expressed therein to make a farther departure from the equality rule. That such was the intention was distinctly held in the Drew case, and we have no misgivings respecting the correctness of the conclusion there reached. It was there said that the provision authorizing the tax to be graded or progressive was a distinct departure from the rule of equality, as near as may be, and authorized the legislature, in its discretion, to graduate the tax by increasing the percentage, within the maximum limit of five per cent., as the value of the property received increased.

In line with that decision we hold that the clearly disclosed object of the amendment to the constitution was to authorize an inheritance tax law similar to those in force in other states of this country; in other words, to ingraft upon the fundamental law of this state a well-known and generally understood system for raising public revenue. We therefore turn our attention for a moment to an inquiry into that system, and some of the general principles associated and connected with it. We will not extend the opinion by a protracted discussion of the subject, but only refer briefly to a few general principles of the law of taxation.

The inheritance tax has been in existence for years, and, although not generally in force in the states of this country until recent times, the general principle has been practiced in European countries for ages, and for a number of years in some of the states of the Union. It is variously termed an "inheritance tax," "succession tax," "legacy tax," and "probate duties"; but, whatever it may be termed, it is not a tax upon property, but upon the right of succession thereto. Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 288, 18 Sup. Ct. 594, 42 L. Ed. 1037; Plummer v. Coler, 178 U. S. 115, 124, 20 Sup. Ct. 829, 44 L. Ed. 998; In re Sherman, 153 N. Y. 1, 46 N. E. 1032; School District v. Learn, 53 Pa. St. 181. An interesting history of the subject may be found in Dos Passos, Inher. Taxn., West, Inher. Taxn. and Knowlton v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969.

Our constitution provides that the tax may be "uniform, graded, or progressive." This language can be construed in but one light. It has a fixed and definite meaning in the law. Seligman in his work on Progressive Taxation (page 11) says: "The term 'progressive tax,' or 'graduated tax,' is also used in another way. If a different rate is levied on different kinds (not different amounts) of property or income, we speak not of a graduation but of a differentiation of the tax. But, if different rates are levied on inheritances or bequests, according to the degree of relationship of the heir or successor, the tax is sometimes called a graduated or progressive tax. In ordinary cases, 'progressive' denotes a changed rate for altered amounts."

Authority to classify persons and property for the purpose of taxation is well settled. When based upon some reasonable and practical rule, founded on such substantial difference of situation or circum-

stances as to reasonably suggest the propriety of a distinction, or based upon some rule of public policy, the courts sustain various forms of classification. Kelly v. City, 85 Pa. St. 170, 27 Am. Rep. 633; Com. v. Delaware, 123 Pa. St. 594, 16 Atl. 584, 2 L. R. A. 798; State v. Farmers, 59 Neb. 1, 80 N. W. 52; Wright v. Stinson, 16 Wash. 368, 47 Pac. 761; Kelley v. Rhoads, 7 Wyo. 237, 51 Pac. 593, 39 L. R. A. 594, 75 Am. St. Rep. 904; Rosenbloom v. State, 64 Neb. 342, 89 N. W. 1053, 57 L. R. A. 922; Merchants & Manufactures Bank v. Pennsylvania, 167 U. S. 461, 17 Sup. Ct. 829, 42 L. Ed. 236; Kentucky Railroad Tax Cases, 115 U. S. 321, 6 Sup. Ct. 57, 29 L. Ed. 414; 27 Am. & Eng. Enc. (2d Ed.) 604. The subject is one resting in the discretion of the legislature, restricted only by the rule of reasonableness and propriety. The authority of the state in this respect is well expressed in Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 10 Sup. Ct. 533, 33 L. Ed. 892, where it was said: "It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products. It may tax real estate and personal property in a different manner. It may tax visible property only, and not tax securities for payment of money. It may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage, are within the discretion of the state legislature, or the people of the state in framing their constitution."

Graduated or progressive taxation is intimately associated with that of classification, and perhaps amounts, substantially, to the same thing. The progressive rule is applied to the income tax, which in principle is identical with the inheritance tax; the only difference being that the income tax is one upon property, while the inheritance tax is upon the right of succession. It is applied in different forms, not materially dissimilar to that fixed by the statute under consideration, in all states and countries where the income or inheritance tax is in force; the amount of the income or inheritance being made the basis for a different rate of taxation. The rule applied in our sister states and by the federal court sustains the statute under discussion, whether it be termed a classified or a progressive tax. It is in a sense arbitrary, but not so unreasonable or unfair as to justify interference by the courts.

The statutes of the state of Illinois provide an inheritance tax substantially like our own, classifying inheritances and devises by amounts; the rate of tax imposed increasing as the amount of inheritance increases. That statute was sustained by the supreme court of that state in the case of Kochersperger v. Drake, 167 Ill. 122, 47 N. E. 321, 41 L. R. A. 446, where the court said: "The tax assessed on classes thus created is absolutely uniform on the classes upon which it operates, and under the provisions of the statute is to be determined by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property inherited, and is not inconsistent with the principle of taxation fixed by the constitution, and is clearly within the sections of the constitution quoted. No want of uniformity with one living who owns property can be urged as a reason why the statute makes an inconsistent rule. No person inherits property or can take by devise, except by the statute; and the state, having power to regulate this question, may create classes and provide for uniformity with reference to classes which were before unknown." See also State v. Guilbert, 70 Oh. St. 229, 71 N. E. 636.

The Illinois statute was under consideration in the supreme court of the United States in Magoun v. Illinois Trust & Savings Bank, 170 U. S. 288, 18 Sup. Ct. 594, 42 L. Ed. 1037, where the subject was carefully gone over and the classification sustained. That case was cited and relied upon in the Drew case in this court, and is directly in point. The court said, in part: "If there is unsoundness, it must be in the classification. The members of each class are treated alike; that is to say, all who inherit $10,000 are treated alike—all who inherit any other sum, are treated alike. There is equality, therefore, within the classes. If there is inequality, it must be because the members of a class are arbitrarily made such and burdened as such on no distinction justifying it. This is claimed. It is said that the tax is not in proportion to the amount, but varies with the amounts arbitrarily fixed, and hence that an inheritance of $10,000 pays, * * * not three per cent. on $10,000 and an increased percentage on the excess over $10,000, but an increased percentage on the $10,000 as well as on the excess; and it is said, as we have seen, that in consequence one who is given a legacy of $10,001 by the deduction of the tax receives $99.04 less than one who

is given a legacy of .$10,000. But neither case can be said to be contrary to the rule of equality of the fourteenth amendment. That rule does not require, as we have seen, exact equality of taxation. It only required that the law imposing it shall operate on all alike under the same circumstances. The tax is not on money. It is on the right to inherit; hence a condition of inheritance, and it may be graded according to the value of that inheritance. The condition is not arbitrary because it is determined by that value; it is not unequal in operation because it does not levy the same percentage on every dollar; does not fail to treat all alike, under like circumstances and conditions both in the privilege conferred and the liabilities imposed."

A similar statute was enacted by the legislature of the state of Washington, which was sustained by the supreme court of that state in State v. Clark, 30 Wash. 439, 71 Pac. 20; and in Colorado in the case of In re Estate of Magnes, 32 Colo. 527, 77 Pac. 853. In most of the states where this form of taxation is in force, a distinction is made between collateral and lineal descendants, and in some lineals are not taxed at all, while in others a greater tax is imposed upon collaterals than upon lineals. A distinction might properly have been made by the legislature of this state, but the failure to do so is not fatal to the statute. Whether a differentiation should be made is a matter of legislative discretion, and in no sense a judicial question.

A careful consideration of the entire subject, in the light of these general principles, leaves in our minds no doubt that the framers of the constitutional amendment intended, as said in the Drew case, to depart from the rule of equality as respects an inheritance tax. It was another step in the evolution of taxation in this state. The statute in question is not obnoxious to the constitution as thus amended, and must be sustained. The authority to make the tax graded or progressive was incorporated in the law advisedly, and in view of the well-known and firmly established system of such taxation in force in this country, based upon the wise and wholesome doctrine that ability to pay is the true basis for all taxation. Though it results in a measure in inequality, it conforms to a system sanctioned and supported by the authorities generally, and is not repugnant to constitutional principles. Three distinct classes are created by the statute, and there is absolute

·equality between the members of each. The same exemption is allowed to those of all classes, and the same rate of taxation is imposed upon members coming within the several classes.

It follows that the judgment appealed from must be, and is, reversed, and the cause remanded, with directions to the court below to proceed in harmony with the views here expressed.