SIDNEY R. REED v. GUNNAR B. BJORNSON AND OTHERS.[1]

March 23, 1934.

No. 29,971.

[1]Reported in 253 N. W. 102.

*Harry H. Peterson,* Attorney General, *William S. Ervin* and *David J. Erickson,* Assistant Attorneys General, and *Joseph M. Donahue,* for appellants.

*Fowler, Carlson, Furber & Johnson* and *G. A. Youngquist,* for respondent.

*Henry Spindler, amicus curiae,* filed a brief in behalf of State Income Tax Committee, Inc.

*Charles F. Keyes, amicus curiae,* filed a brief in support of the contention of appellants.

*Abbott, MacPherran, Dancer, Gilbert & Doan, amici curiae,* filed a brief in support of the contention of respondent.

*LORING, Justice.*

This was a proceeding under the uniform declaratory judgments act to test the constitutionality of L. 1933, c. 405, an act imposing income taxes and franchise or privilege taxes measured by income for the benefit of school districts of the state. The complaint sets up the enactment of the law, that the plaintiff comes within its terms as subject to the income tax provision thereof, and that the defendant tax commissioners have demanded that he file a return and pay the tax and are threatening the enforcement thereof. From an order overruling a demurrer interposed by the defendants and certifying that the questions involved are important and doubtful the defendants have brought this appeal. No question is raised as to the validity of the declaratory judgments act, and we follow the Supreme Court of the United States in holding that it authorizes a proceeding which amounts to a justiciable controversy. Nash-

ville, C. & St. L. Ry. Co. v. Wallace, 288 U. S. 249, 53 S. Ct. 345, 77 L. ed. 730, 87 A. L. R. 1191.

The act whose constitutionality is here in question provides for an income tax at graduated rates and with exemptions. The principal constitutional objections are that those features offend art. 9, § 1, of the state constitution, which provides that taxes shall be uniform upon the same class of subjects, and contravene that part of the fourteenth amendment to the constitution of the United States, which prohibits a state from denying to any person within its jurisdiction the equal protection of the laws. Other objections are raised and will be later considered.

We are not concerned with the public policy involved in the imposition of such a tax. That responsibility is wholly with the legislature within the constitutional limitations which the people of the state and nation have prescribed. Aside from such limitations, the only check on that branch of the government in the matter of taxation is its responsibility to its constituents. We are not concerned with the tax as a part of any social program, liberal or conservative, and this is not the place for our views as to the expediency, advisability, or economic justice or injustice of such a tax. We are concerned only with the sound interpretation of the constitution of this state and of the United States. If we err in our construction of the latter, our views may be corrected by the Supreme Court. Our interpretation of our own constitution is of course final.

■ We approach the solution of the questions presented under the guidance of certain elementary and fundamental rules, among which is that which invokes every presumption in favor of the constitutionality of an act of the legislature, and that the court should not declare such an act unconstitutional except when satisfied after the most careful consideration that it conflicts with some provision of the state or federal constitution. State ex rel. Hildebrandt v. Fitzgerald, 117 Minn. 192, 134 N. W. 728. On the other hand, we may not stretch the constitution to suit the convenience of the hour.

■ It is elementary that the power of taxation is inherent in sovereignty and that under our system of government it reposes in

the legislature, except as it is limited by the state or the national constitution. In other words, the constitutional provisions are not a grant of, but a limitation upon, this power, and except in so far as thus limited it is exhaustive and embraces every conceivable subject of taxation. State v. Wells Fargo & Co. 146 Minn. 444, 179 N. W. 221; Brushaber v. Union Pacific R. Co. 240 U. S. 1, 36 S. Ct. 236, 60 L. ed. 493, 501, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713. Such being the case, it is not to be questioned that the legislature has power to levy an income tax at the flat rate and without exemption, unless that tax be illegal from the standpoint of double taxation, a question which we shall discuss later in this opinion.

■ Our uniformity clause was the major restriction placed upon the legislature by the present art. 9, § 1, when adopted by the people in 1906. Prior to that time our constitution had required taxes to be as "nearly equal as may be and that all property upon which taxes are levied shall have a cash valuation and be equalized and uniform throughout the state." The present art. 9, § 1, requiring taxes to be "uniform on the same class of subjects," was adopted under circumstances which conclusively show that it was the purpose of the people to relieve the legislature of the rather narrow restrictions theretofore placed upon that branch of the government by the constitution and to enlarge its powers in regard to taxation. As well said by Mr. Justice Sutherland in his dissenting opinion in Home B. & L. Assn. v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 245, 78 L. ed. 255, 276, 88 A. L. R. 1481:

"The whole aim of construction, as applied to a provision of the constitution, is to discover the meaning, to ascertain and give effect to the intent, of its framers and the people who adopted it. * * * The necessities which gave rise to the provision, the controversies which preceded, as well as the conflicts of opinion which were settled by its adoption, are matters to be considered to enable us to arrive at a correct result. * * * The history of the times, the state of things existing when the provision was framed and adopted, should be looked to in order to ascertain the mischief and the remedy. * * * As nearly as possible we should place ourselves in the condition of those who framed and adopted it. * * * And if the

meaning be at all doubtful, the doubt should be resolved, wherever reasonably possible to do so, in a way to forward the evident purpose with which the provision was adopted." Citing numerous cases.

The history of the times indicates clearly that the people, in adopting the 1906 amendment, were liberating the legislature from most of the previous constitutional restraints in regard to taxation. The fair adjustment of tax burdens under rapidly changing social conditions demanded more comprehensive powers in the legislature; and the people, relying upon the responsibility of that body to its constituents, relaxed the restraints theretofore existing. They were enlarging, not curtailing, the legislative power. The then attorney general so construed the proposal in his official interpretation of it to the voters. In common parlance throughout the state the proposal was known and characterized as the "wide open tax amendment."

Much space in the briefs is devoted to a discussion of whether or not the tax here involved is a property tax. The United States Supreme Court, in Pollock v. Farmers L. & T. Co. 157 U. S. 429, 557, 15 S. Ct. 673, 39 L. ed. 759, held that in so far as the federal income tax reached the income from real and invested personal property it amounted to a direct tax and should have been apportioned under the federal constitution. In Brushaber v. Union Pacific R. Co. 240 U. S. 1, 36 S. Ct. 236, 60 L. ed. 493, L. R. A. 1917D, 414, Ann. Cas. 1917B, 713, it was apparently regarded as an excise tax in so far as it applied to income derived from sources other than real or invested personal property. In passing upon our inheritance tax law, our court has said, though the question was not then for decision, that the income tax is a property tax. State ex rel. Foot v. Bazille, 97 Minn. 11, 106 N. W. 93, 6 L.R.A. (N.S.) 732, 7 Ann. Cas. 1056.

While income as it is received is necessarily property, a tax upon it has many characteristics which differ quite radically from those of a tax levied upon real or invested personal property. Income is a more fleeting or transitory benefit which comes according to present efforts or the wisdom or luck of past accumulations. Many

people who own little or no tangible or intangible property have large incomes and enjoy great benefit from the protection which organized society affords. They not only have ability to pay a tax for that protection but get value received in liberal measure for what they may be required to pay. So do those who receive large incomes from property. An income tax is calculated to take toll from the flow of this property to the individual through the arteries of organized social life and to cause it to bear a share of the burden of government. In many ways such a tax is *sui generis*. It imposes a tax on the net income or revenue which passes into or through a man's hands within a prescribed period, a large share of which never finds permanent investment. Whether or not income is property and a tax thereon a tax on property, art. 9, § 1, of our constitution requires all taxes to be uniform on the same class of subjects, not merely on the same class of property as in some state constitutions. Obviously incomes constitute a *subject* of taxation, and the uniformity clause applies regardless of whether or not the tax is upon property as such. Portland V. & S. Co. v. Hoss, 139 Or. 434, 9 P. (2d) 122, 81 A. L. R. 1136.

It will help us in the solution of the question here presented if we determine whether there is a distinction between our own constitutional provision requiring uniformity and the requirement of equal protection of the laws contained in the federal constitution. Certain legislative classifications have been questioned under the fourteenth amendment, and the judicial results may be helpful to us here if the two provisions are in effect the same or similar when applied to taxation. The respondent, recognizing the importance of this point, strenuously contends that the uniformity clause is the more restrictive. Just how much more he does not assume to say, except that he asserts that it is sufficiently so to prohibit the classifications in the act at bar. In Lake Superior C. I. Mines v. Lord, 271 U. S. 577, 581, 46 S. Ct. 627, 628, 70 L. ed. 1093, 1101, a tax case, the Supreme Court, construing our constitutional requirement of uniformity, said that "it seems to us sufficiently plain that this provision goes no further than the fourteenth amendment. Consequently, if the legislation under review does not offend that

amendment there is no conflict with the state constitution." Of course the proper construction to be given our constitution is not a federal question but one upon which our own views are controlling. Nevertheless we regard the construction thus placed upon it by that high court as entitled to great weight.

The supreme court of Oregon in Standard Lbr. Co. v. Pierce, 112 Or. 314, 333, 228 P. 812, 818, in sustaining a graduated income tax with exemptions and speaking of the fourteenth amendment, held that "for all practical purposes the limitation mentioned is identical with the restrictions imposed by the Oregon constitution," which requires uniformity upon the same class of subjects.

In Magoun v. Illinois T. & S. Bank, 170 U. S. 283, 296, 18 S. Ct. 594, 599, 42 L. ed. 1037, the Supreme Court, in applying the fourteenth amendment to the classifications made in the Illinois graduated inheritance tax law, quoted with approval the following significant language:

"And if the constituents of each class are affected alike, the rule of equality prescribed by the cases is satisfied. In other words, the law operates 'equally and *uniformly* upon all persons in similar circumstances.' " (Italics ours.)

The inference seems apparent that equality of protection includes uniformity of application to the subject of taxation and that our uniformity clause is not more restrictive than the equal protection clause of the fourteenth amendment.

In the Magoun case, 170 U. S. 283, 18 S. Ct. 594, 42 L. ed. 1037, the court said that inheritance taxes were exempt from the uniformity and equality clauses of the state constitutions, but that question was not before it, the Illinois court having previously held in Kochersperger v. Drake, 167 Ill. 122, 127, 47 N. E. 321, 41 L. R. A. 446, that the inheritance tax, though graduated into six classes, was "general and uniform." The Magoun opinion clearly held that the privilege of inheritance must be conferred or regulated by equal laws treating all alike under like circumstances and conditions both in the privilege conferred and the liabilities imposed. We are convinced that our uniformity clause is no more restrictive than the fourteenth amendment.

If classifications logically similar to those before us have been justified under the fourteenth amendment, those holdings throw light on whether or not the classifications under our income tax act violate our uniformity clause. There is much similarity between the usual method of graduating an inheritance tax with exemptions and the modern method of graduating an income tax and providing exemptions. If the graduation and exemption is "equal and uniform" as to one it is difficult to see why it is not so as to the other. Prior to the adoption of the 1906 amendment the people had amended the constitution so as specifically to authorize a graduated inheritance tax with exemptions. After several futile attempts to enact a law which complied with the amendment, the legislature finally passed a graduated inheritance tax law which was upheld in State ex rel. Foot v. Bazille (1905), 97 Minn. 11, 106 N. W. 93, 6 L.R.A.(N.S.) 732, 7 Ann. Cas. 1056. When the 1906 amendment was adopted, the specific authority for this character of an inheritance tax was repealed, and the law was left to stand upon the taxing power inherent in the legislature as limited only by the uniformity clause of the 1906 amendment. Undoubtedly, at that time the people believed that the proposed amendment did not nullify the graduated features of the then existing inheritance law. They were justified in that belief by State ex rel. Graff v. Probate Court, 128 Minn. 371, 383, 150 N. W. 1094, L. R. A. 1916A, 901, where this court held the law valid against the objection that it did not comply with our uniformity clause or the equal protection clause of the fourteenth amendment. It is true that the court passed upon those questions without elaborate discussion, but examination of the briefs and record shows that the questions were adequately raised.

The respondent earnestly contends that the inheritance tax cases are not in point; that such so-called taxes are not taxes, but imposts or tolls upon the statutory right of succession. As late as In re Estate of Harris, 179 Minn. 450, 452, 229 N. W. 781, 782, this court, speaking through Mr. Justice I. M. Olsen, said:

"The inheritance tax, while not a property tax, is nevertheless taxation and a tax, and is governed by many of the rules applied to property taxes."

But whether or not the exaction placed upon an inheritance be regarded as a tax, it nevertheless is a subject of legislation, and as such the law authorizing it must conform to the fourteenth amendment. Magoun v. Illinois T. & S. Bank, 170 U. S. 283, 18 S. Ct. 594, 42 L. ed. 1037. As said in State ex rel. Knox v. Gulf, M. & N. R. Co. 138 Miss. 70, 104, 104 So. 689, 691, a graduated income tax case, where the court was considering a like contention:

"It is true that the Magoun, Billings, Knowlton, and Stebbins cases deal with graduated inheritance taxes, and it may be, as it is said, that the inheritance of property is not a right but is a privilege which the state may confer or withhold at its pleasure, and that, in conferring the privilege, it may attach such conditions thereto as it may see fit. Nevertheless it will not do to say that they are not in point and controlling here, for the reason that it is beyond dispute, and was pointed out in the Magoun case that, when the state confers a privilege, it must 'not fail to treat "all alike under like circumstances and conditions, both in the privilege conferred and the liabilities imposed." ' "

Mississippi holds that an income tax is an excise tax. It may be added that if an inheritance tax is not a tax the fourteenth amendment applies with greater vigor. As said by the supreme court of Oregon in Standard Lbr. Co. v. Pierce, 112 Or. 314, 327, 228 P. 812, 816, in discussing the fourteenth amendment:

"In taxation there is a broader power of classification than in some other exercises of legislation."

In the Oregon case just cited the court upheld a graduated income tax against the assertion that it violated the uniformity clause of the Oregon constitution and the fourteenth amendment. The respondent makes the point that the Oregon law levied an income tax upon all persons or corporations *doing business* in that state and was hence in the nature of an excise or business tax and might be excluded from the uniformity provision. The court does not place its holding upon that ground. It said [112 Or. 324]:

"Broadly speaking, the act deals with incomes from whatever source derived, received by residents of the state and by nonresi-

dent individuals and corporations doing business in the state, and separates such incomes from other taxable subjects and for the purpose of taxation, places them in a distinct class.

"The action of the legislature in the respect mentioned is perhaps more accurately designated as a selection of a source (not theretofore resorted to in this state), from which public revenue may be derived, than the classification of a subject for taxation. It constituted the first step in developing and putting into statutory form the scheme of taxation provided by the act, and did not in the true sense involve the power of the legislature to classify in furtherance of its powers of taxation.

"The exercise of the power to classify, which the legislature, by the enactment of the income tax act, assumed it possessed, lies in the progressive feature of the act."

Further on the court says [112 Or. 336]:

"And such a classification is not rendered invalid, or the tax void, as contended by plaintiff, as to the incomes included therein which grow out of the ownership or use of property, and like their sources, are property."

Moreover, the Oregon court holds that the uniformity clause of their constitution applies to excise taxes and that such taxes must be imposed alike on all persons in substantially the same situation. Portland V. & S. Co. v. Hoss, 139 Or. 434, 447, 9 P. (2d) 122, 81 A. L. R. 1136. Therefore their income tax, no matter what its nature, had to be uniform in its application. It was so held to be. We regard the Oregon cases as directly in point here.

The power to classify is primarily with the legislature, and its laws should not be declared invalid unless it clearly appears that they transgress the constitution. State ex rel. Youngquist v. Common Sch. Dist. No. 78, 180 Minn. 44, 47, 230 N. W. 115. The classification must not be unreasonable, arbitrary, or, as is sometimes said, capricious. It must rest on some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly circumstanced shall be treated alike. Standard Lbr. Co. v. Pierce, 112 Or. 314, 228 P. 812, and cases cited. It

must operate "equally and uniformly upon all persons in similar circumstances." Magoun v. Illinois T. & S. Bank, 170 U. S. 283, 296, 18 S. Ct. 594, 599, 42 L. ed. 1037. Any classification is permissible which has a reasonable relation to some permitted end of governmental action. Watson v. State Comptroller, 254 U. S. 122, 124, 41 S. Ct. 43, 65 L. ed. 170, 175.

In Pacific Exp. Co. v. Seibert, 142 U. S. 339, 351, 12 S. Ct. 250, 253, 35 L. ed. 1035, 1039, the court said:

"This court has repeatedly laid down the doctrine that diversity of taxation, both with respect to the amount imposed and the various species of property selected either for bearing its burdens or for being exempt from them, is not inconsistent with a perfect uniformity and equality of taxation in the proper sense of those terms; and that a system which imposes the same tax upon every species of property, irrespective of its nature or condition or class, will be destructive of the principle of uniformity and equality in taxation and of a just adaptation of property to its burdens."

That incomes are distinct in character from other sources of taxation probably accounts for their previous omission and present selection as a source of revenue. Different rates are imposed upon different classes as distinguished by amount of income, although all incomes bear the same rate in their respective brackets, the first $1,000 of taxable income being taxed at the same rate whether or not the recipient has more income. The similarity in principle between a graduated income tax and a graduated inheritance tax has been recognized by this court. In State ex rel. Foot v. Bazille, 97 Minn. 11, 20, 106 N. W. 93, 97, 6 L.R.A.(N.S.) 732, 7 Ann. Cas. 1056, it was said:

"Graduated or progressive taxation is intimately associated with that of classification, and perhaps amounts, substantially, to the same thing. The progressive rule is applied to the income tax, which in principle is identical with the inheritance tax; the only difference being that the income tax is one upon property, while the inheritance tax is upon the right of succession. It is applied in different forms, not materially dissimilar to that fixed by the statute

under consideration, in all [?] states and countries where the income or inheritance tax is in force; the amount of the income or inheritance being made the basis for a different rate of taxation. The rule applied in our sister states and by the federal court sustains the statute under discussion, whether it be termed a classified or a progressive tax. It is in a sense arbitrary, but not so unreasonable or unfair as to justify interference by the courts."

See also Kochersperger v. Drake, 167 Ill. 122, 127, 47 N. E. 321, 322, 41 L. R. A. 446, where a graduated inheritance tax was held to be "absolutely uniform on the classes upon which it operates."

In Georgia a graduated income tax, though there considered not to be a property tax, was held to be valid under a constitutional requirement of uniformity. Featherstone v. Norman, 170 Ga. 370, 386, 153 S. E. 58, 70 A. L. R. 449. Missouri has sustained the uniformity of its graduated income tax. Bacon v. Ransom (1932) 331 Mo. 985, 56 S. W. (2d) 786, 789.

Ability to pay and extent of protection or benefit appear to the courts to be proper considerations to justify classification. It was so held by this court in State ex rel. Foot v. Bazille, 97 Minn. 11, 106 N. W. 93, 6 L.R.A.(N.S.) 732, 7 Ann. Cas. 1056. It was again cited as a principle in Mutual B. L. Ins. Co. v. County of Martin, 104 Minn. 179, 116 N. W. 572. The justice of such a classification has been recognized by the Supreme Court in Schaffer v. Carter, 252 U. S. 37, 40 S. Ct. 221, 64 L. ed. 445. Other states than our own have graduated income taxes which must be largely justified upon the same considerations. State ex rel. Knox v. Gulf, M. & N. R. Co. 138 Miss. 70, 104 So. 689; Featherstone v. Norman, 170 Ga. 370, 153 S. E. 58, 70 A. L. R. 449; Bacon v. Ranson (1932) 331 Mo. 985, 56 S. W. (2d) 786; Diefendorf v. Gallet, 51 Idaho, 619, 10 P. (2d) 307; O'Connell v. State Board of Equalization (1933) 95 Mont. 91, 25 P. (2d) 114; Stanley v. Gates, 179 Ark. 886, 19 S. W. (2d) 1000. Little light, however, can be had from decisions in states where constitutional provisions differ from our own or where income taxes are regarded as exempt from uniformity clauses or where they are held subject to restrictions not contained in our constitution. Wisconsin has a constitution which specifically authorizes a

graduated income tax. State ex rel..Bolens v. Frear, 148 Wis. 456, 134 N. W. 673, 135 N. W. 164, L. R. A. 1915B, 569, 606, Ann. Cas. 1913A, 1147. We do not find that the Supreme Court of the United States has been called upon to pass upon the validity, under the fourteenth amendment, of the Wisconsin tax or that of any other graduated state income tax. Illinois has declared its graduated income tax invalid under constitutional provisions peculiar to that state. Bachrach v. Nelson, 349 Ill. 579, 182 N. E. 909. Pennsylvania has a constitutional provision similar to ours, but nothing of which we may take judicial notice indicates that our provision was taken from that state or that it was the intent of our people to adopt the interpretation thereof by the Pennsylvania courts. The later decisions of that state indicate that it considers that its constitution does not prohibit the legislature from exercising broad powers of classification. Heisler v. Thomas Colliery Co. 274 Pa. 448, 118 A. 394, 24 A. L. R. 1215; Commonwealth v. Clark, 195 Pa. 634, 46 A. 286, 57 L. R. A. 348, 86 A. S. R. 694. Washington has held its graduated tax invalid by a five-to-four decision. Culliton v. Chase, 173 Wash. 309, 25 P. (2d) 81. If some of the reasoning by the majority is sound, it is difficult to see how any such state tax can be upheld without an amendment to the federal constitution.

In the light of our interpretation of our uniformity clause, the weight of authority as well as of sound logic appears to justify the classification of income taxes according to amounts received. Courts appear to regard such classification as a just apportionment of burden.

We are in accord with the Oregon court in regarding income as a proper subject for selection as a source of taxation and the graduation of the tax as a legitimate exercise of the legislature's power to classify. It operates equally and uniformly upon all in like circumstances. We conclude that the graduated feature of our law does not invalidate it either under our constitution or under the equal protection or due process clauses of the fourteenth amendment. Classification being justified, its details are for the legislature. We cannot interfere unless the method adopted brings a result "clearly fanciful and arbitrary." Raymond v. Holm, 165 Minn. 215, 218, 206 N. W. 166.

■ The exemptions provided for by the act may be justified upon more theories than one. It may be said to be a further exercise of the power of classification. The expense of administration applied to small incomes may wholly justify the omissions. The omissions may be "reasonably founded in 'the purposes and policy of taxation.'" Watson v. State Comptroller, 254 U. S. 122, 125, 41 S. Ct. 43, 65 L. ed. 170. As well said by the Supreme Court in quoting with approval from Cooley on Taxation:

" 'The right to make exemptions is involved in the right to select the subjects of taxation and apportion the public burdens among them, and must consequently be understood to exist in the lawmaking power wherever it has not in terms been taken away. To some extent it must exist always, for the selection of subjects of taxation is of itself an exemption of what is not selected.' Cooley, on Taxation, 200. See, also, the remarks of Mr. Justice Bradley in Bell's Gap Railroad v. Pennsylvania, 134 U. S. 232." Magoun v. Illinois T. & S. Bank, 170 U. S. 283, 299, 18 S. Ct. 594, 600, 42 L. ed. 1037, 1044. W. C. Peacock & Co. v. Pratt, 58 C. C. A. 48, 121 F. 772; Ludlow-Saylor Wire Co. v. Wollbrinck, 275 Mo. 339, 205 S. W. 196; Standard Lbr. Co. v. Pierce, 112 Or. 314, 228 P. 812; State v. Pinder, 30 Del. 416, 108 A. 43, 47. In the case last cited the Delaware court said [30 Del. 426]:

"All that the law requires is that the classification of the persons who are to be exempt from the operation of the statute shall not be arbitrary and unreasonable, under the conditions which the legislature believed to exist, that it shall be possible for the court to say there was a fair reason for the exemption, and that the classification rests upon some difference which bears a reasonable and just relation to the act in respect to which the classification was proposed."

The larger exemption to married persons and for dependents may be justified on the theory that the exemptions are in reality extended to the incomes of a plurality of persons. In Diefendorf v. Gallet, 51 Idaho, 619, 644, 10 P. (2d) 307, such an exemption was justified on the ground of public policy in "preserving and further-

ing the home." We find no cases holding such classification of exemptions unreasonable or void. The classification may well be justified by a policy which seeks to exempt the reasonable living expenses of a family as contrasted with those of a single person, and to leave both in a situation where they may not become public burdens. W. C. Peacock & Co. v. Pratt, 58 C. C. A. 48, 121 F. 772-777.

■ Respondent contends that the exemptions are forbidden by the construction we have placed on our constitution and that the enumeration of compulsory exemptions excludes the power to make others. Language to that effect appears in City of Minneapolis v. Armson, 188 Minn. 167, 246 N. W. 660, but was not necessary to the decision. It was there held that no exemption was created by the law under consideration. It must be borne in mind that a grant of power to exempt was not being made by the constitution, but a restriction upon the power to tax was being laid down by the enumeration of compulsory exemptions, except in the instance of personal property exemptions to the head of a family. There is a serious question whether the rule of *expressio unius* applies with the same force to a constitution as to a statute. State ex rel. Putnam v. Holm, 172 Minn. 162, 166, 215 N. W. 200, 54 A. L. R. 333. We think it does not do so here. In Stanley v. Gates, 179 Ark. 886, 892, 19 S. W. (2d) 1000, 1002, speaking of this maxim of construction, the court said:

"That the maxim 'is not to be applied with the same rigor in construing a state constitution as a statute, and that only those things expressed in such positive affirmative terms as plainly imply the negative of what is not mentioned will be considered as inhibiting the powers of the legislature.' The reason is that the constitution of a state is not a grant of enumerated power, but its chief object is to impose limitations upon the several departments of government. If a contested enactment is not prohibited either by the letter or the spirit of the constitution, it is authorized."

We hold that the enumeration of exemptions in our constitution does not forbid making others which do not offend the uniformity

clause or the federal constitution. The power to fairly exempt is inherent in the power to tax.

■ Nor do we think unequal double taxation results from the imposition of this tax. We do not follow those authorities which like Massachusetts consider a tax upon income from property as a tax upon the property itself. If the income be considered property, it is distinct from the property which is the source of the income. Double taxation is not forbidden by either the state or the national constitution. It may result in lack of uniformity and hence be illegal. It may offend the equal protection clause, but we do not see that this tax does either. We believe that all of our cases which hold double taxation illegal are based upon one or the other of these grounds or, as in Railway Express Agency, Inc. v. Holm, 180 Minn. 268, 272, 230 N. W. 815, upon a direct constitutional inhibition, art. 16.

Other questions have been suggested but are not presented by this record. They will have to be solved when appropriately raised.

The order overruling the demurrer is reversed.