## In re McKENNAN'S ESTATE.
## SHERMAN et al. v. STATE.

As to inheritance and excise tax laws, the constitutional requirement of equality and uniformity is satisfied, if there is equality and uniformity between the individuals constituting each class established by the law.

The Legislature may make any classification of the recipients of inherited estates for taxation which it sees fit, and the courts may not interfere, provided there is the required equality and uniformity between the persons in the separate classes, and provided the classification is not based on a wholly arbitrary and unnatural plan.

The method of progression from transmission of less to those of greater value provided by the inheritance tax law (Sess. Laws 1905, c. 54), whereby the higher rate of tax in case of transmission of a greater estate is levied upon the whole value of the property transmitted, rather than the increased rate applying only to the excess in value of property transmitted, over the amount subject to the next lower rate, is not in violation of Const. art. 6, § 17, requiring all taxation to be equal and uniform.

Laws 1905, c. 54, establishing an inheritance tax, is not defective for failure to provide any method for its enforcement, since section 1 expressly creates a liability on the part of the recipient of the inheritance to pay the amount of the tax to the county treasurer, under which that officer could bring an ordinary action to collect for the use of the state.

(Opinion filed, Feb. 23, 1911.)

On rehearing. Former opinion reversed, and judgment below affirmed.

For former opinion, see 25 S. D. 369, 126 N. W. 611.

McCOY, J. This is an appeal from the circuit court of Minnehaha county involving the constitutionality of the inheritance tax law of this state as contained in chapter 54, Sess. Laws 1905. The cause is now before this court upon rehearing. Decision and judgment of this court were entered May 10, 1910, reversing the judgment of the lower court, and which decision appears in 25 S .D. 369, 126 N. W. 611. A general statement of the facts will be found in the former decision.

Prior to her death, Helen G. McKennan disposed of her property by certain deeds and a will. The trial court, in substance, made the following findings of fact and conclusions of

law: On September 6, 1906, the said Helen G. McKennan, in contemplation of death, made and executed to the First Congregational Church of Sioux Falls a warranty deed to certain lands therein described, which deed was fully acknowledged and delivered in escrow with definite and irrevocable instructions in writing that the same, immediately upon her death, be delivered to the grantee. She died on September 29, 1906. The deed was at once delivered and placed of record. Such church is a religious corporation, and the conveyance so made was made and received with the purpose and intent that such property should be used exclusively for religious and charitable purposes. The church society has since sold such lands for $5,000, and has used the proceeds in the construction of a church building for such society, which building was used exclusively for religious purposes. Said land so conveyed was of the value of $5,000. On the 6th day of September, 1906, in contemplation of death, Helen G. McKennan made and executed to the city of Sioux Falls a deed of a certain tract of land, such deed conditioned that said land was to be used and kept as a public park for the benefit of the public, but with power on the part of the city to sell such part of the tract as should seem to it necessary for the purpose of improving the remainder. This deed was also placed in escrow under the same conditions as the deed above mentioned, and in the same manner was delivered and placed of record. Certain parts of said land have been sold under the power contained in said deed. The value of the land was $17,000. At the time of the death of Helen G. McKennan, she left property, real and personal, other than above mentioned, to the value of $32,000, some $5,000 of which was money on hand. Certain claims have been filed against the estate, which are in litigation and which are not yet adjudicated. The will provided that, after the payment of legacies and debts, the remainder of the property should be devised to one Sherman, who was the executor, to be held by him in trust, to be sold and converted and the proceeds therefrom paid over to certain trustees for the purpose of constructing and maintaining a public hospital in the city of Sioux Falls, which said trust was one exclusively for charitable purposes.

As conclusions of law, the court found that the property conveyed to the church society was subject to tax on the valuation of $4,900 at the rate of 4 per cent.; that the property conveyed to the city was subject to a tax on a valuation of $15,900 at the rate of 6 per cent.; that the real estate devised in trust was subject to a tax on a valuation of $31,380 subject to a reduction by allowance of further claims, such tax to be at a rate of 8 per cent.; that the church society was liable for the tax on its property, and the executor and trustee in his official capacity liable for the tax on the residue. Decree was entered in conformity with such findings and conclusions; said decree containing a direction and an order to the church society and to the city to pay the tax to the county treasurer, and a direction and order to the trustee to retain the tax on the residue until the claims against the estate should be adjudicated.

Section 1, c. 54, Laws 1905, provides: "That all property, real, personal and mixed which shall pass by will or by the intestate laws of this state, or according to the provision of any statute in this state, from any person who may die seised or possessed of the same while a resident of this state, or if decedent was not a resident of this state, at the time of his death, which property, or any part thereof, shall be within this state, or any interest therein or income therefrom which shall be transferred by deed, grant, sale or gift made in contemplation of the death of the grantor, or bargainor or giver, or intended to take effect in possession or enjoyment after such death, to any person or persons or to any body politic or corporate in trust or otherwise, or by reason whereof any person or any body politic or corporate shall become beneficially entitled, in possession or expectancy, to any property or income thereof, shall be and is subject to a tax at the rate hereinafter specified, to be paid to the treasurer of the proper county for the use of the state, and all heirs, legatees and devisees, administrators, executors and trustees shall be liable for any and all such taxes until the same shall have been paid as hereinafter directed." This statute also then divides those by whom such taxable estates are received into three general classes, viz.: (1) Near relations;

(2) distant relations; (3) strangers, with a different rate of taxation upon the value of the estate transmitted to each class. As will be observed, the basis of this classification is relationship. It will also be observed that under this classification near relations pay a tax of 1 per cent. of the net value of the estate transmitted and received, after deducting the provided for exemption; distant relations pay a tax of 2 per cent. of the net value of the estate transmitted and received after deducting the provided for exemption; strangers pay taxes varying from 4 to 10 per cent. of the net value of the estate transmitted and received after deducting the exemption. It will also be observed that, as between these different classes, there is not uniformity or equality of the per cent. or rate of taxation, but each class pays a different rate and a tax different in amount, even though the estate transmitted to an individual within each class might be of the same value. Again, this statute in question subdivides the third class (strangers) into four subclasses, viz.: (1) Estates of the value of $10,000 or less, paying a tax of 4 per cent. of the net value of the estate transmitted, less the exemption; (2) estates over $10,000 and not exceeding $20,000, paying a tax of 6 per cent.; (3) estates over $20,000 and not exceeding $50,000, paying a tax of 8 per cent.; (4) estates over $50,000 paying a tax of 10 per cent. These four subclasses are not based on relationship, but purely and solely on the progressive amount or graduated value of the estate transmitted to each individual receiver thereof. As between these four different classes there is the same lack of uniformity and equality in rate or per cent. of taxation that exists between the three prior mentioned classes based on relationship.

All courts and all governments conceive that the transmission of property occasioned by death, although differing from tax on property as such, is nevertheless a usual subject of taxation. It is the succession or transmission or receipt of property occasioned by death that is subject to the tax. It is the privilege of succeeding to or inheriting the property of a deceased person, and not the property itself, which is thus transmitted, that is taxed. In the consideration of this subject the distinction between an inherit-

ance tax as such and a property tax as such must at all times be kept in view. Constitutions, statutes, arguments, and reasoning applicable to a property tax are not always germane or applicable to the consideration of an inheritance tax. It seems to be generally held that the provisions of a Constitution, such as section 2, Art. 11, of our state Constitution, have no applicability to or effect upon an inheritance tax law such as the one now under consideration, but that such provisions relate solely to property taxation. Knowlton v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969; Magoun v. Illinois Trust & Savings Bank, 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037; In re Fox's Estate, 154 Mich. 5, 117 N. W. 558; 12 Current Law, p. 2081; Nunnemacher v. State, 129 Wis. 190, 108 N. W. 627, 9 L. R. A. (N. S.) 121; State v. Guilbert, 70 Ohio St. 229, 71 N. E. 636, 1 Am. & Eng. Ann. Cas. 25; In re Watson, 17 S. D. 486, 97 N. W. 463.

The Legislature of this state had the undoubted right to create the inheritance law contained in chapter 54, Laws 1905, unless prohibited by some federal or state constitutional provision (Magoun v. Illinois Trust & Savings Bank, 170 U. S. 292, 18 Sup. Ct. 594, 42 L. Ed. 1037; Booth's Ex. v. Commonwealth, 130 Ky. 88, 113 S. W. 61), and we must look to some other constitutional provision than that relating to property taxation to find the constitutional prohibition, if any such exists. It is contended that section 17, art. 6, contained in the Bill of Rights in our state Constitution, which provides that "No tax or duty shall be imposed without the consent of the people * * * and all taxation shall be equal and uniform," prohibits the statute in question; and that this statute is in conflict with this section of our state Constitution. We are of the opinion that this contention is not well founded. While it is no doubt true that section 17, art. 6, is broad enough to comprehend and applies to inheritance laws, still we are constrained to the view that the equality and uniformity comprehended within the meaning of this constitutional provision have been satisfied in the statute in question, and that this view is substantiated, and borne out by the weight of authority. To start with it is not the question whether some better, more advisable, or

more equal and uniform law might have been created and passed, but solely the question whether this statute is invalid by reason of its being in conflict with section 17, art. 6, of the Constitution. In the case In re Fox's Estate, 154 Mich. 5, 117 N. W. 558, the Supreme Court of Michigan, when construing a very similar inheritance tax law in connection with constitutional provisions of that state, said: "But every Constitution in the Union is founded upon the principle that 'all men are equal before the law,' and that life, liberty, and property are secured to all alike. Such principle, however, is no broader in its scope and effect than the provisions of the fourteenth amendment of the United States Constitution, and no law which can be sustained under such provision of the federal Constitution can be held to violate either the letter or spirit of our state Constitution." That clause of the fourteenth amendment reading, "Nor shall any state deny to any person within its jurisdiction the equal protection of the laws," is as broad and comprehensive in scope and effect as the language of section 17 of our Bill of Rights, reading, "and all taxation shall be equal and uniform," can possibly be. Equality and uniformity when relating to the same subject are similar terms and mean the same thing, whether in a state or federal Constitution. This clause of the fourteenth amendment in a way was expressly aimed at state Constitutions and state legislative enactments with reference to equality and uniformity of state laws generally. Bell's Gap Ry. Co. v. Pennsylvania, 134 U. S. 232, 10 Sup. Ct. 533, 33 L. Ed. 892. The equality and uniformity of inheritance, succession, and other kindred laws are within the scope and purview of the fourteenth amendment. 9 Fed. St. Ann. pp. 608, 618. It is said, and evidently truly, that chapter 54, Laws 1905, was modeled after a similar statute in force in the state of Illinois. The Illinois statute first makes three classes liable to the payment of the tax based on relationship—(1) near relatives, (2) distant relatives, (3) strangers—the same as our statute, and then again subdivides the third class (strangers) into subclasses based solely on the progressive value of the inheritance received by each individual by the same method of progression as employed in our statute. The Supreme

Court of Illinois in passing on the constitutionality of the statute in that state in the case of Kochersperger v. Drake, 167 Ill. 122, 47 S. E. 321, 41 L. R. A. 446, said: "A tax which affects the property within a specific class alike is uniform as to that class, and there is no provision of the Constitution which precludes legislative action from assessing a tax on that particular class. By this act of the Legislature six classes of property are created heretofore absolutely unknown. It is those classes of property, depending upon the estate owned by one dying possessed thereof, which the state may regulate as to its descent and the right to devise. The tax assessed on classes thus created is absolutely uniform on the classes upon which it operates, and under the provisions of the statute it is to be determined by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property inherited; and it is not inconsistent with the principle of taxation fixed by the Constitution, and is clearly within, the sections of the Constitution quoted. No want of uniformity of one living who owns property can be urged as a reason why the statute makes an inconsistent rule. No person inherits property or can take by devise, except by the statute; and the state, having power to regulate this question, may create classes, and provide for uniformity with reference to classes which were before unknown. Laws of this character have been sustained in Pennsylvania, New York, Maryland, Virginia, North Carolina, and other states. They have been held invalid in New Hampshire and Ohio, and some other states. We are not disposed to enter into an analysis of these cases and a consideration of the principles on which they have been decided. The broad principle presented is that the Legislature may create new classes of property with reference to estates under which they may regulate the right to inherit or devise or take under devise, and, such right existing, such classes may be created, and, as created, may be uniform, and the assessment by valuation, when declared to operate equally on the right of succession to such classes, is not a violation of the privileges of the sections of article 9 of the Constitution of the state of Illinois.." In Magoun v. Illinois Trust &

Savings Bank, supra, the constitutionality of this same Illinois statute was before the Supreme Court of the United States wherein it was held that this Illinois statute in no way conflicted with the fourteenth amendment. The court said: "But neither case can be said to be contrary to the rule of equality of the fourteenth amendment. That rule does not require as we have seen exact equality in taxation. It only requires that the law imposing it shall operate on all alike under the same circumstances. It is not unequal in operation because it does not levy the same percentage on every dollar, does not fail to treat all alike under like circumstances and conditions both in the privilege conferred and the liabilities imposed."

The state of Michigan also has a very similar inheritance tax law, also divided into classes based on relationship, and again subdivided into subclasses based on the progressive value of the estate received by the individual in any particular class. That statute was also held not to be in conflict with the fourteenth amendment in re Fox's Estate, 154 Mich. 5, 117 N. W. 558. The court said: "This statute creates two main classes; the first being composed of lineal heirs and near relatives, and the second of distant relatives and strangers. The former is again subdivided into two subclasses dependent upon the amount of the estate received. Classification based upon relationship and also upon the amount transferred have been sustained in the federal courts and in our own and many other state courts. If the constituents of each class or subclass are affected alike by the statute the rule of equality prescribed by the constitutional provisions and defined by the courts in construing these provisions is satisfied. Tested by this rule, it is evident that the statute under consideration meets the constitutional requirements. There is equality within the classes, and that is all that is required." The state of Wisconsin also has a very similar inheritance tax law which divides the recipients of the inheritance into classes based on relationship, and again subdivides them into subclasses based on the progressive increasing value of the inheritance. Several similar statutes of Wisconsin were first held to be unconstitutional as lacking uniformity and equality, but

in Nunnemacher v. State, 129 Wis. 190, 108 N. W. 627, 9 L. R. A. (N. S.) 121, the Wisconsin statute is held not to be in conflict with constitutional provisions requiring uniformity and· equality. In that case the Supreme Court of Wisconsin said: "That, so far as the taxation of property is concerned, there can be no classification which shall interfere with substantial and practical uniformity of rate, and that the clause (in the Wisconsin Constitution) 'the rule of taxation shall be uniform,' if applicable to excise taxation at all, means no more than the general equality clause of the Constitution or 'the equality protection of the law' guaranteed by the fourteenth amendment. Taxation of privileges and occupations manifestly cannot be uniform in the sense that property taxation may be uniform. Property may be reduced to its money value and a uniform rate levied upon it all; but, when occupation, privileges, or property transfers are to be taxed there is no common ground upon which they can meet, no standard by which their relative value or worth can be measured or compared, and hence uniformity of taxation or even equality of taxation as applied to excise taxes must necessarily mean taxation which does not discriminate, but which operates alike on all persons similarly situated. In other words, proper classification may be made and the different rate applied to each class."

The state of Minnesota has a similar inheritance tax law with classes based on relationship and also subdivided into classes based on the progressive values of the estates inherited. In State v. Bazille, 97 Minn. 11, 106 N. W. 93, 6 L. R. A. (N. S.) 732, the Supreme Court of Minnesota adopted the reasoning of the Illinois Supreme Court in the Drake Case and the Supreme Court of the United States in the Magoun Case, construing the Illinois statute, and holding that where there is equality between the classes established by an inheritance tax law that the constitutional requirements of equality and uniformity are satisfied.

The inheritance law of Ohio has had a history somewhat analogous to that of Minnesota and Wisconsin—first held unconstitutional, afterwards held valid. In State v. Guilbert, 70 Ohio St. 229, 71 N. E. 636, 1 Am. & Eng. Ann. Cas. 25, the Supreme

Court held that an excise inheritance tax which operates uniformly throughout the state and operates equally upon all persons standing in the same category does not deprive any of the equal protection of the law.

This court in the case of In re Watson, 17 S. D. 486, 97 N. W. 463, has passed upon the precise question. In that case this court said: "The clause, 'and all taxation shall be equal and uniform,' found in the Bill of Rights, cannot be ignored. What is meant by equality and uniformity in this connection? The Legislature is not commanded to tax all occupations. To levy the same amount of tax on each trade, occupation, or business in the state would be manifestly impracticable and unjust. No more effectual method of defeating the real purpose of the rule could be devised. Every person, natural or artificial, whether possessing property or not, enjoys the protection of the government, and should contribute to its support. To determine the extent of contribution in each individual case, with equality and uniformity, is the design of every wise and just system of taxation. But so long as no two persons in the state are surrounded by precisely the same circumstances and possessed of precisely the same ability to bear the burdens of taxation, no absolutely equal or just system of collecting revenues will be evolved. Perfectly equal taxation, it has been said, will remain an unattainable good so long as laws and government and men are imperfect. Perfect equality is not possible. So we construe the clause requiring all taxation to be equal and uniform as meaning with reference to taxes on occupations that the burden imposed shall fall alike on all persons who are in substantially the same situation—a rule generally recognized, even in the absence of an express constitutional requirement as to uniformity."

Decisions of similar effect exist in many other states. See 1 Cooley, Taxation, pp. 72, 73; Tiedeman, Pol. Power, p. 282; Farrington v. Mensching, 187 N. Y. 8, 79 N. E. 884, 10 L. R. A. (N. S.) 625; State v. Applegarth, 81 Md. 293, 31 Atl. 961, 28 L. R. A. 812; Knowlton v. Moore, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969; Campbell v. California, 200 U. S. 87, 26 Sup. Ct.

182, 50 L. Ed. 382; Union Trust Co. v. Judge, 125 Mich. 487, 84 N. W. 1101; In re Nettleton, 76 Conn. 235, 56 Atl. 565; In re Magnes' Estate, 32 Colo. 527, 77 Pac. 853; State v. Alston, 94 Tenn. 674, 30 S. W. 750, 28 L. R. A. 178; Crawford v. Linn County, 11 Or. 482, 5 Pac. 738. From all these decisions, although, with the exception of In re Watson and Nunnemacher v. State, construing constitutions differing from ours, but still construing the question of the meaning of the words "equality and uniformity" in connection with excise taxation, we are compelled and constrained to gather therefrom that the constitutional rule of equality and uniformity is satisfied with reference to inheritance and excise laws, when there is equality and uniformity between each and every individual within or constituting any particular specified class; that there is equality and uniformity within the classes, created by the law, is all that is required; otherwise, under any other construction, it would be impossible to have any classified inheritance law at all based on the progressive value of the inheritance under the Constitution of this state, as it would be an utter impossibility to classify any such law without inequality and lack of uniformity as between the different classes. The very idea of classification comprehends inequality and lack of uniformity. No matter what the form or basis of the classification, it would still logically be subject to the same objection as to inequality and lack of uniformity. There is no constitutional provision in this state expressly prohibiting a progressive or graduated inheritance law or prohibiting classification with reference thereto. By the use of the word "duty" in section 17 of the Bill of Rights, an excise law is comprehended, if consented to by the people through the Legislature, and that the same shall be equal and uniform in its operation, but this equality and uniformity is satisfied by equality and uniformity within each class specified by the Legislature. Such is the direct holding in Re Watson and in the Nunnemacher Case. In the latter case the court said that the clause "the rule of taxation shall be uniform," if applicable to excise taxation at all, means no more than the general equality clause in the Constitution or the equal protection of the law guar-

anteed by the fourteenth amendment, and hence we conclude that section 17, art. 6, of our Bill of Rights, is no broader in scope and effect as to equality and uniformity as applied to excise taxation than is the fourteenth amendment of the federal Constitution, and that the decisions on that subject applicable to one are applicable to the other. It is clear from all these decisions that the Legislature may make any proper classification of recipients of inherited estates for the purposes of such taxation that it chooses, so long as there is equality and uniformity between those within and constituting each separate class. It also necessarily follows that, if the Legislature has the right to classify on some proper recognized basis, it is not within the judicial province of the courts to say what such classification shall be so long as the Legislature is within the limits of such proper basis. In other words, the courts will not "race opinions" with the Legislature as to which might create the better law. It seems to be everywhere conceded that relationship constitutes a proper basis for such classification. It is contended that the subclassification of strangers under the statute in question, whereby those receiving $10,000 and less pay 4 per cent. of the value of the estate received, and those receiving over $10,000 and not exceeding $20,000 pay 6 per cent., and those receiving over $20,000 and not exceeding $50,000 pay 8 per cent., and those receiving over $50,000 pay 10 per cent., is an arbitrary and unreasonable classification, without any reasonable justification therefor. Every individual receiving an estate falling in any one of these four classes would pay precisely the same rate and amount of tax on an estate of like value, so that the burden would fall alike on all similarly situated. This seems to be the test of the rule as to equality and uniformity of classification. It seems also to be generally held that the power to classify the recipients of inherited estates is subject to the rule that the classification must not be so purely arbitrary and unnatural as to have no reason to justify it; that is, it must be devoid of all reasonable grounds on which to rest in order to invalidate such classification. In re Watson, supra; In re Keeney's Estate, 194 N. Y. 281, 87 N. E. 428; Farrington v. Mensching, 187 N. Y. 8, 79 N. E. 884, 10

L. R. A. (N. S.) 625. The basis of the classification of this por-
tion of the statute in question as will be observed, is purely and
solely the progressive rate in amount of the value of the estate
inherited. In Knowlton v. Moore the Supreme Court of the
United States, in construing the inheritance provision of the
Spanish-American War Tax of 1898, speaking through Mr. Jus-
tice White, said: "Lastly, it is urged that the progressive rate
feature of the statute is so repugnant to fundamental principles of
equality and justice that the law should be held to be void, even
although it transgresses no express limitation in the Constitution.
Without intimating any opinion as to the existence of a right in
the courts to exercise the power which is thus invoked, it is appar-
ent that the argument as to the enormity of the tax is without
merit. It was disposed of in Magoun v. Illinois Trust & Savings
Bank, 170 U. S. 283, 293 [18 Sup. Ct. 594, 42 L. Ed. 1037]. The
review which we have made exhibits the fact that taxes imposed
with reference to the ability of any person upon whom the burden
is placed to bear the same have been levied from the foundation
of the government. So, also, some authoritative thinkers and a
number of economic writers contend that a progressive tax is
more just and equal than a proportional one. In the absence of
constitutional limitation, the question whether it is or is not is
legislative, and not judicial. The grave consequences which it is
asserted must arise in the future if the right to levy a progressive
tax be recognized involves in its ultimate aspect the mere assertion
that free and representative government is a failure, and that the
grossest abuses of power are foreshadowed unless the courts usurp
a purely legislative function. If a case ever should arise where
an arbitrary and confiscatory exaction is imposed bearing the guise
of a progressive or any other form of tax, it will be time enough
to consider whether the judicial power can afford a remedy by ap-
plying inherent and fundamental principles for the protection of
the individual, even though there be no express authority in the
Constitution to do so. That the law which we have construed
affords no ground for the contention that the tax imposed is arbi-
trary and confiscatory is obvious." It will be observed from this

quotation that the decision in the Magoun Case is approved which construes the Illinois statute where the progressive rate is classified on the same basis and by the same methods as the law of this state. Again, in this connection, we emphasize the statement that there is no constitutional provision in South Dakota, expressly or otherwise, prohibiting such classification, that section 17 of our Bill of Rights means substantially the same thing, and has no broader scope and effect than the fourteenth amendment. In the Magoun Case the appellant claimed that: "The progression is likewise unnecessarily arbitrary if we take the view that the tax is levied on the amount received. Under such an assumption, those taking the larger amounts are required to pay a larger rate on the same sums upon which those taking smaller sums pay a smaller rate; that is to say, one who receives a legacy of $10,000 pays 3 per cent., or $300, thus receiving $9,700 net, while one receiving a legacy of $10,001 pays 4 per cent. on the whole amount, or $400.04, thus receiving $9,600.96, $99.04 less than the one whose legacy was actually $1 less valuable."

This is precisely the claim made on behalf of the appellant in the case at bar. But the unsoundness and fallacy of this claim is fully exposed in this case. Speaking through Mr. Justice McKenna, the court said: "The reasoning of appellant is based on the view that the tax is one on property, instead of one on the succession, as held by the Supreme Court of the state. Being on the succession, the court further held as we have seen that the latter is to be regarded as new property, and the $20,000 and other property not taxed are not therefore exemptions. In this view the Illinois court is in harmony with the majority of other courts of the country. We concur in the reasoning. It is true that the amount of the exemption is greater in the Illinois law than in any other, but the right to exempt cannot depend on that. Whether it shall be $20,000 as in Illinois law or $10,000 as in that of Massachusetts, or other amounts as in other laws, must depend upon the judgment of the Legislature of each state, and cannot be subject to judicial review. If such review could ascertain the factors of judgment, and could apply them with indisputable wis-

dom to the different conditions existing, it would be outside of its province to do so. That manifestly is a legislative, not a judicial, function. The first and second classes therefore of the statute depend on substantial distinctions, and their classifications are not arbitrary. Nor do the exemptions of the statute render its operation unequal within the meaning of the fourteenth amendment. The right to make exemptions is involved in the right to select the subjects of taxation and apportion the public burdens among them, and must consequently be understood to exist in the lawmaking power wherever it has not in terms been taken away. To some extent it must always exist; for the selection of subjects of taxation is of itself an exemption of what is not selected. The provisions of the statute in regard to the tax on legacies to strangers of the blood of an intestate need further comment. There are four classes created, and manifestly there is equality between the members of each class. Inequality is only found by comparing the members of one class with those of another. It is illustrated by appellant as follows: One who receives a legacy of $10,000 pays 3 per cent. or $300, thus receiving $9,700 net, while one receiving a legacy of $10,001 pays 4 per cent. on the whole amount, or $400.04, thus receiving $9,600.96 or $99.04 less than the one whose legacy was actually $1 less valuable. These, however, are conceded to be extreme illustrations, and we think, therefore, that they furnish no test of the practical operation of the classification. When the legacies differ in substantial extent, if the rate increases, the benefit increases to greater degree. If there is unsoundness, it must be in the classification. The members of each class are treated alike; that is to say, all who inherit $10,000 are treated alike, all who inherit any other sum are treated alike. There is equality, therefore, within the classes. If there is inequality, it must be because the members of a class are arbitrarily made such and burdened as such upon no distinctions justifying it. This is claimed. It is said that the tax is not in proportion to the amount, but varies with the amounts arbitrarily fixed, and hence that an inheritance of $10,000 or less pays 3 per cent., and that one over $10,000 pays not 3 per cent. on $10,000 and an increased

percentage on the excess over $10,000, but an increased percentage on the $10,000 as well as on the excess. And it is said, as we have seen, that in consequence one who is given a legacy of $10.001 by the deduction of the tax receives $99.04 less than one who is given a legacy of $10,000. But neither case can be said to be contrary to the rule of equality of the fourteenth amendment. That rule does not require, as we have seen, exact equality of taxation. It only requires that the law imposing it shall operate on all alike under the same circumstances. The tax is not on money, it is on the right to inherit, and hence a condition of inheritance, and it may be graded according to the value of the inheritance. The condition is not arbitrary because it · is determined by that value. It is not unequal in operation because it does not levy the same percentage on every dollar; does not fail to treat all alike under like circumstances and conditions, both in the privilege conferred and the liabilities imposed. The jurisdiction of the courts is fixed by amounts. The right to appeal is. As was said at bar, Congress of the United States has classified the right of suitors to come into the United States courts by amounts. Regarding these alone, there is the same inequality that is urged against classification of the Illinois law. All license laws and all specific taxes have in them an element of inequality. Nevertheless, they are universally imposed, and their illegality has never been questioned. We think the classification of the Illinois law was in the power of the Legislature to make, and the decree of the circuit court is affirmed."

In the Nunnemacher Case the Supreme Court of Wisconsin, realizing that the same basic principle of classification was involved in the construction of the Wisconsin statute, as in the Illinois, said: "And the clause 'the rule of taxation shall be uniform,' if applicable to excise taxation at all, means no more than the general equality clause of the Constitution or the equal protection of the law guaranteed by the fourteenth amendment. Taxation of privileges and occupations manifestly cannot be uniform in the sense in which property taxation may be uniform. Property may be all reduced to its money value and a uniform rate levied upon

it all; but, when occupations, privileges, and property transfers are to be taxed, there is no common ground upon which they can meet, no standard by which their relative value or worth can be measured or compared, hence uniformity of taxation, or even equality of taxation as applied to excise taxes, must necessarily mean taxation which does not discriminate, but which operates alike on all persons similarly situated. In other words, proper classification may be made and a different rate applied to each class. These considerations bring us to the third point of the argument, and, in fact, partly answer it, namely, the objection that the tax here in question violates the rule of uniformity, the rule, as applied to excise taxation, meaning simply that there shall be no unjust discrimination. The sole remaining question under this contention is whether the present law·violates the true principles of classification. It was said in the Black Case, 113 Wis. 205, 89 N. W. 522,·90 Am. St. Rep. 853, that classification between lineals and collateral relatives and strangers does not violate the rule of uniformity, nor the principle of the 'equal protection of the laws,' and that reasonable exemption of small estates also may be al-. lowed without violating uniformity. While the admissions made by counsel in the Black Case tend to deprive this expression of weight as an authority, the arguments in the present case, aided by our own investigations, have convinced us that the conclusions are correct and sanctioned by the great weight of authority. In order to justify the classification, there must, of course, be substantial and real differences of situation, calling for, or reasonably suggest- ing, the necessity for different treatment. That a wife or daugh- ter deprived by death of the care and support of her natural protector stands in a substantially different position from a col- lateral relative, and that her situation justifies different treatment, goes almost without saying, and that a collateral relative stands in a substantially different position from a mere stranger seems rea- sonably clear, although in less degree. The authorities are quite unanimous in justifying substantially the classification which is embodied in the law, and the Supreme Court of the United States has approved of it in numerous decisions, notable among which is

Magoun v. Illinois Trust & Savings Bank. The progressive feature of the act involves greater difficulty. By this feature increased rates of taxation are imposed as the amount of the bequest increases. Thus, if one legatee receives $25,000 and one in the same degree of kinship receives $50,000, while they both will pay the same rate on $25,000, the second legatee will pay a higher rate on his second $25,000. It is said that this is rank discrimination, that there is no difference in situation justifying a difference in classification, but that classification of persons cannot be based on mere differences in ability to pay. If this question were an original one, it would seem serious. It is somewhat pursuasive to know that railroad license taxes have been levied upon the progressive plan, increasing as the earnings per mile increase since 1876 without question, and that street railroads and electric lighting companies are now subject to a like progressive rate of taxation. This fact would not, of course, be conclusive. The question has, however, been met in other courts, and it has been held with substantial uniformity that the progressive feature does not violate the general guaranties of equality and the equal protection of the laws contained in the various state constitutions and in the fourteenth amendment of the Constitution of the United States. The decision of the Supreme Court of the United States as to the force of the fourteenth amendment is necessarily conclusive, and, as the general equality guaranties of our own Constitution are substantially the equivalent of the equal protection of the laws guaranteed by the fourteenth amendment, we are content to follow the decisions of the United States Supreme Court, and hold that the progressive feature does not violate the Constitution."

In the case In re Fox the Supreme Court of Michigan upholds the classification based on the progressive amounts of the value of the inherited estate under a statute precisely similar in principle to the Illinois and South Dakota enactments, and in this case the court said: "This statute creates two main classes; the first being composed of lineal and near relatives of the testator or intestate and the second of distant relatives and strangers. The former is again subdivided into two subclasses depending upon

the amount of the estate received. Classifications based upon relationship and also upon the amount transferred have been sustained in the federal courts." In this case the decision in the Magoun Case is quoted and approved and adopted after a full review of the decisions apparently holding otherwise.

In the case of State v. Bazille, 97 Minn. 11, 106 N. W. 93, 6 L. R. A. (N. S.) 732, the Supreme Court of Minnesota, by Brown, J., in construing substantially a like statute, said: "The history of taxation is in harmony with all human affairs, one of evolution. Its progress from the earliest times to the present day is one of constant development, in keeping with the advancing intelligence of man, unrolling step by step, with changing economic and social conditions, tardily, however, new methods and means of subjecting untaxed property to the tax rolls. But in more recent times new species of property, new in kind, intangible in character, vast in extent, and enormous in value, have, owing to industrial growth and commercial enterprise, come rapidly into existence, and methods and means of reaching and subjecting the same to its share of the public burdens have developed and been put into practical operation by the Legislatures and courts of this country. 'Ability or faculty to pay' has come to be the test in determining the justness of taxation. It is not only the ideal basis of taxation, but the goal towards which society is steadily working. It lies instinctively and unconsciously at the bottom of all our endeavors at reform. The equity and fairness of this theory in its broadest sense when we reflect upon the vast fortunes accumulated as the result of facilities, not possessed by people in general, is apparent and obvious. It works no injustice or harm to those thus fortunately situated, does not injuriously affect productive or industrial agencies, and relieves in a measure those with lesser opportunities and those to whom taxation is always an extreme burden. This theory does not, however, harmonize well with a strict application of the fundamental mandate of equality as applied more particularly to the proportional system of taxation in force in this and other states. We mean by proportional system a tax at a fixed and uniform rate, in proportion to the amount of

taxable property, based upon a cash valuation; and the Legislatures and courts have been not a little embarrassed in attempts to apply it. But an examination of the books discloses that the equality mandate has been expanded and made to yield, from time to time, to new and advancing social and economic conditions. The general principle is retained, but is applied with less rigor and strictness. The inheritance tax has been in existence for years, and, although not generally in force in the states of this country until recent times, the general principle has been practiced in European countries for ages, and for a number of years in some of the states of the Union. It is variously termed an 'inheritance tax,' 'succession tax,' 'legacy tax,' and 'probate duties'; but, whatever it may be termed, it is not a tax upon property, but on the right to succession thereto. The term 'progressive taxation' or 'graduated taxation' is also used in another way. If a different rate is levied on different kinds (not different amounts) of property or income, we speak not of a graduation, but of a differentiation of the tax. But, if different rates are levied on inheritances or bequests according to the degree of relationship of the heir or successor, the tax is sometimes called a graduated or progressive tax. In ordinary cases 'progressive' denotes a changed rate for altered amounts. Authority to classify persons or property for the purpose of taxation is well settled. When based upon some reasonable and practical rule, founded on such substantial difference of situation or circumstances as to reasonably suggest the propriety of a distinction, or based upon some rule of public policy, the courts sustain various forms of classification. The subject is one resting in the discretion of the Legislature, restricted only by the rule of reasonableness and propriety. Graduated or progressive taxation is intimately associated with that of classification, and perhaps amounts, substantially to the same thing. The progressive rule is applied to the income tax, which in principle is identical with the inheritance tax; the only difference being that the income tax is one upon property, while the inheritance tax is one upon the right of succession. It is applied in different forms, not materially dissimilar to that fixed by the statute under con-

sideration, in all states and countries where the income or inherit-
ance tax is in force; the amount of the income or inheritance
being made the basis for a different rate of taxation. The rule
applied in our sister states and by the federal court sustains the
statute under discussion, whether it be termed a classified or a
progressive tax. It is in a sense arbitrary, but not so unreason-
able or unfair as to justify interference by the courts. The stat-
utes of the state of Illinois provide an inheritance tax substantially
like our own classifying inheritances and devises by amounts; the
rate of tax imposed increasing as the amount of inheritance in-
creases. The statute was sustained by the Supreme Court of that
state in the Drake Case. The Illinois statute was under considera-
tion in the Supreme Court of the United States in Magoun v.
Illinois Trust & Savings Bank, where the subject was carefully
gone over and the classification sustained." In this connection we
also call attention to the exhaustive and comprehensive note to this
decision commencing on page 732, 6 L. R. A. (N. S.), the first
paragraph of which is as follows: "Classification of Inheritances
or Gifts for Purposes of Succession Tax on Basis of Amount.—
That a progressive tax upon inheritances is now generally upheld
by the courts of this country demonstrates that the judges are no
longer wedded to the old theory that the only equality and uni-
formity possible in taxation must be based upon mathematical pro-
portions, demanding that the same rate of taxation be applied to
all persons alike, regardless of the ability to pay, and regardless,
too, of the fact that in one case a proportional rate would take
from one man the necessary means of subsistence, and from an-
other merely the means to purchase unnecessary luxuries. In the
days when the comparatively insignificant wealth of the country
was more evenly distributed and the richest citizen had but little
more than his poorer fellows, such principles were undoubtedly
just and fair; but today, when fortunes exist whose immensity
was not dreamed of by the founders of the Republic, fortunes
which owe their existence not solely to the unprincipled greed of
their owners, but more especially to the unbounded resources of
the country, and in many cases to the partiality of the laws, and

which would have no existence whatever without the government and population of America, a new principle of equality, or a new construction of the old principle, becomes absolutely necessary. The truth is this, the Legislatures and courts of this country have quite generally recognized, and, early following the teachings of the most advanced economic writers, have come to hold, that the fundamental principle of equality, at least in matters of inheritance taxation, is not to be determined by a proportional rate of taxation. It is to be observed in this connection that both Legislatures and courts have generally acted upon the theory that inheritance taxes are laid, not upon property, but upon the right to succeed to property; in other words, are mere duties in the nature of excise taxes, and are not subject to the same tests with respect to uniformity and equality as property taxes."

It will serve no useful purpose to further multiply authorities. In all the cases cited are mentioned many other and abundant additional authorities sustaining the principle that a classification based on the increasing and progressing amount of the estate inherited is not an arbitrary, unnatural, or unreasonable basis for such classification. The overwhelming weight of recent authority is in favor of the validity of the classification contained in our statute. The argument that one receiving an inheritance of $10,000 would pay a tax of $396, and that one receiving an inheritance of $10,001 would pay a tax of $594.06, thereby making the additional $1 inherited pay an increased tax of $198.06, is unsound and opposed by the weight of recent authority for two reasons: First. This character of argument is only applicable to a property or proportional tax, and has no application to a classified progressive inheritance tax. The distinction between a property tax as such and an excise tax as such is wholly lost sight of in the use of this illustration. This character of reasoning applies only to the value of a dollar as property, and not as a dividing point between two or more classes of a progressive inheritance or excise tax. As is said in the Nunnemacher Case, there is no common ground on which this distinction between a property and an excise tax can meet. Second. The comparison afforded by this illustra-

tion is made between those within different, instead of between
those within the same class, thus falling wholly without the estab-
lished rule that comparison should only be made between those
within the same class. This precise illustration and argument has
been directly answered and expressly repudiated by the Supreme
Court of the United States in the Magoun Case; by the Supreme
Court of Wisconsin in the Nunnemacher Case; by the Supreme
Court of Michigan in the Fox Case; by the Supreme Court of
Minnesota in the Bazille Case; and by the Supreme Court of
Illinois in the Drake Case. It has been suggested that in the
Magoun Case the federal court only followed the decision of the
state court in construing a state Constitution, and did not pass on
the question as an original proposition before the federal court,
but considered itself bound by the state decision, and is not there-
fore to be considered as an authority, but this certainly must be a
misapprehension, as a reading of the case will justify no such in-
ference. While the federal "concurs in the reasoning" of the state
court, yet it goes far beyond the scope of the state decision in its
own originality, and bases its decision on the fourteenth amend-
ment, and it was recognized as an original authoritative decision
of the federal court in Knowlton v. Moore. While our statute
may differ from others as to rate or percentage of taxation, may
differ as to whether the increased rate is to be computed on an
amount within a class between certain fixed limits, which includes
all lower classes if any, or on the amount within a class which
excludes the amount of prior classes, may differ as to the amount
of the exemption, still the principle involved as to equality and
uniformity, the principle involved as to the arbitrariness and un-
reasonableness of the classification, the principle involved as to
discriminations between different classes, is just the same under
all these statutes, and under all these decisions cited, whether
under a state Constitution or under the fourteenth amendment, or
whether under a state or federal enactment. It is also perfectly
clear that the question of choice whether an exemption shall be
$10,000 or $20,000 or some other amount, whether the rate or per-
centage of taxation shall be two, four, or some other amount,

whether the increased rate of percentage from a lower to a higher class shall be computed on the amount of a class which includes or excludes the amount of prior classes, is not subject to judicial review and is solely a subject within the legislative function, so long as the rules of "equality and uniformity" and "arbitrary" classification have not been violated. A classification based on the whole of an increasing amount between fixed limits, and which includes the amount of preceding classes, such as contained in the Illinois and South Dakota statutes, is logically, legally, and constitutionally in precisely the same category as the classification in Wisconsin based on the net increased amount of a higher over a lower class. Both classes result in permissible discriminations and inequalities as between different classes, the only difference being in that the Illinois and South Dakota statutes result in a shade more inequality than does the Wisconsin, but nevertheless the Illinois and South Dakota classification is just as fairly and squarely as a matter of legal and logical principle within the "equality and uniformity" rule as to all persons similarly situated within any one of the specified classes, just as fully and fairly within the "progressive amount" rule as to arbitrary classification, as is the Wisconsin classification. This is evidently the reason why in the Nunnemacher Case the Wisconsin court said that the Wisconsin statute was substantially the same as that of Illinois, and why the Minnesota court in the Bazille Case also said that the Minnesota statute was substantially the same as that of Illinois.

Similar discriminations, inequalities, and lack of uniformity exist when comparison is made between different classes based purely on relationship; still these classes are recognized to be fairly within the "equality and uniformity" rule, as applied to excise taxation. The South Dakota statute, being squarely within both the rules as to "equality and uniformity" and as to the classification based on "progressive amount" of the inherited estate, is valid and should be sustained.

It is contended that the inheritance law of this state is defective, in that no method by which the provisions thereof may be

enforced is provided. Section 1 of the act clearly and expressly creates a liability on the part of the recipients of such inherited estates to pay the amount of any such tax to the county treasurer for the use of the state. There is no reason why the county treasurer might not maintain an ordinary action based upon the liability thus created to pay against the receivers of any such inherited estates to recover for the use of the state the tax under this statute, whenever there is a refusal to pay the same. The statutory liability to pay is just as strong in binding force and effect as if it were contractual.

We are of the opinion that the former decision of this court should be reversed, and that the judgment of the circuit court should be affirmed.

WHITING, J. I am unable to concur in the conclusion reached by my colleague in his most able opinion, as I see no reason to change my views as expressed in the former opinion of this court. By reference to such opinion, it will be seen that there is no difference of views regarding the right of the Legislature to enact laws taxing inheritances, nor, the right to classify those receiving transmission of property both upon basis of kinship with deceased and upon the value of the property transmitted; neither is there any conflict upon the proposition that mere inequalities arising from the workings of the law do not render same void. As noted in such former opinion, there are several states that have enacted laws like the one at bar and their courts have sustained such laws. There are other states that have enacted laws such as were held in such former opinion would be valid under our Constitution and their courts have sustained the same. My colleague has quoted from the courts of all these states in support of the classification adopted by our Legislature. With such decisions I take no issue so far as they go only to the sustaining of the classification and giving the grounds upon which such classification are held constitutional. It is only when it comes to fixing the rates of taxation for the several classes, classified as to value of property transmitted, that in my opinion the reasoning of some of the courts is unsound, and upon this feature of the law I feel justified in

expressing my views more fully than before, fearing that one of the grounds for my conclusions heretofore expressed may not have been fully understood.

Regardless of other questions discussed in the former opinion of this court, we would call attention again to the question asked therein: "Must our statute in its application result in inequalitites not consistent with any reason or theory upon which progression is allowable?" It would seem to me that the following propositions are too axiomatic to admit of dispute: While inequalities incident to proper classification do not render a tax law unconstitutional on the ground of lack of uniformity, yet all inequalities resulting from features of the law not consistent with the grounds for such classification render the law unconstitutional. When a classification is made for purposes of taxation, the reasons which render such classification constitutional cannot be disregarded when it comes to fixing the bases and rates of taxation among the several classes. It seems to be the universal view of all courts upholding classification based on value of property transmitted that it finds its justification from one or both of two reasons: (1) That the person receiving the larger sum is better able to pay the tax; (2) that, inasmuch as large aggregations of wealth are against public policy, the privilege of receiving the larger estates is much greater in proportion to the value thereof than the privilege of receiving the smaller estate, and therefore the transmission of a large estate should be taxed more in proportion than the transmission of a smaller estate. The respondent concedes that these are the bases upon which classification is justified. But the respondent contends (and, if we read aright the views of the majority of the court, my colleagues concur therein) that, when once there has been a classification constitutional in nature, then, in fixing the rate of taxation within a class and the basis for same, no regard need be paid to the rate and basis within any other class. With this contention we cannot agree, and herein lies the reason for our different conclusions. If respondent is correct, although the classification is based upon the theory that the recipient

of the larger estate is able to pay a greater tax rate, or else upon the theory that the transmission of the large estate is more against public policy, or upon both, yet it would be perfectly constitutional, after having made a proper classification, to disregard the grounds for such classification, and to have taxed the transmission of the smaller estate at a greater rate than the transmission of the larger or even to vary the rates making the rate first greater and then smaller, and then greater and smaller again as between the several classes. To illustrate again, if respondent's contention is right, though it is conceded that a classification based upon difference in kinship is constitutional for the reason that the instincts of natural justice teach us that to receive from one distantly or not at all related is a greater privilege than to receive from one nearer related, yet, after making a classification founded on degrees of kinship, the Legislature could disregard the grounds therefor and tax transmissions to near relatives at a greater rate than to strangers. It will not do to answer such propositions by saying that the Legislature would never attempt it. The question is what are we holding that it would be constitutional for them to do. It is constitutional on grounds of public policy for public carriers to classify as between whites and blacks and provide separate carriages for each, but, though such classification is lawful, any attempt to provide better accommodations for one than the other would be unlawful because not founded upon the reason upon which such classification is allowed. To illustrate further: It might be lawful for a public carrier to provide a separate carriage for persons afflicted with a contagious disease and refuse admission thereto to all other persons; but, while a public carrier may provide a separate carriage for those who smoke, it could not exclude non-smokers therefrom. The act of the carrier in each case would have to conform to the reasons upon which the classification was based.

Let us apply similar reasoning to the law before us and consider the grounds lying at the foundation of the classification found in such law. Let us suppose that this law provided also for the taxation of successive transmissions received by one per-

son at different times and from different sources, so that a person receiving $10,000 today from A.'s estate and $10,000 next year from B.'s estate would be placed in the same class and such transmissions taxed according to the same rule as one who received in one lump sum $20,000 from C.'s estate. A law that would provide that upon the receipt of more than one transmission the rates and bases for taxation should be the same as if all were received at once certainly would be constitutional so far as that feature was concerned. In the case of the man receiving two $10,000 transmissions, would it be considered constitutional to impose upon him upon receipt of the second $10,000 not only the increased tax on the second $10,000, but also compel him to pay an additional tax on the transmission received a year before? It seems to me not. It is the transmission and receipt of the second $10,000 that renders the party more able to pay the increased rate. It is the transmission and receipt of the second $10,000 that is more against public policy, and there exists no reason or grounds upon which classification can be based that is consistent with the requirement of a payment of an additional tax on the first $10,000 because of the receipt of the second $10,000, but both of the grounds upon which such classification is based fully justify an increased rate upon the second $10,000. Yet there are absolutely no grounds for distinction between the supposed case and law and the receipt by a man under our law of $20,000. It is the receipt of the second $10,000 that justifies under the grounds which lie as the bases of the classification the imposition of the higher rate, and there is absolutely no reason consistent with the grounds or bases of classification that justifies the increase of the rate upon the first $10,000 simply because of the receipt of the additional sums. To me it seems clear that the Legislature has made a constitutional classification and then rendered the law unconstitutional by making an unconstitutional distinction in fixing the bases of taxation as between the different classes, the same as an unconstitutional distinction allowed a public carrier as between different races might render a law unconstitutional which contained a perfectly constitutional classification of such races; the classification being based

upon a ground which did not justify the distinction attempted to be made between the classes.

It is complained that the illustrations given in the former opinion of this court are extreme illustrations. This is certainly begging the issue. These illustrations show clearly to what the principle contended for by respondent might lead, not only when applied to inheritance taxes, but when applied to the innumerable other matters concerning which classifications may be legally made. We should not depart from the principle that, when classification is made for a certain purpose, the grounds which rendered the classification legal must not be disregarded in effecting the purpose of the law.