STATE OF SOUTH DAKOTA, Respondent, v. CITY OF
SIOUX FALLS, Appellant.

(244 N. W. 365.)

(File No. 7397.   Opinion filed October 4, 1932.)

*L. E. Waggoner* and *Dan W. Conway,* both of Sioux Falls, for
Appellant.

*M. Q. Sharpe,* Attorney General, and *Frank W. Mitchell,* Assistant Attorney General, for the State.

CAMPBELL, P. J.   Defendant, city of Sioux Falls, a municipal corporation in this state, during the period July 1, 1927, to December 31, 1928, purchased 31,744 gallons of gasoline.   This gasoline was ordered by defendant from refineries outside the state of South Dakota, shipped from said refineries in tank cars, received

by defendant city in the same original packages in which it entered this state, unloaded by defendant city into its own storage tanks, and used by defendant city through its different departments; a portion being used by the park board in its motor vehicles, a portion by the electric light department of said city in motor vehicles operated by that department, for operation of pumps and for operation of a ditching machine used by the city for excavating for water and sewer pipe. No motor vehicle operated by this gasoline was used for other than municipal purposes, or was operated outside the corporate limits of said city. Defendant city did not pay upon this gasoline the tax of 4 cents per gallon imposed upon motor-vehicle fuel by chapter 168, Laws 1927, as amended by chapter 19, Laws Special Session 1927. Due claim and demand for said tax, together with penalty and interest thereon, being made and refused, the present action was instituted for the collection thereof. The city answered, denying its liability for any such tax. The facts were stipulated, and upon trial of the issues so joined in the circuit court, findings, conclusions, and judgment were in favor of the plaintiff, from which judgment defendant city has now appealed.

Appellant urges that if the Motor-Vehicle Fuel Tax Law of this state is interpreted to require payment of the tax by appellant under the circumstances of this case it must be held unconstitutional within the purview of that portion of article 1, § 10, Constitution U. S., which provides that " * * * no state shall * * * lay any imposts or duties on imports. * * * "

The word "imports," as used in this section of the Federal Constitution, has application only to articles imported from foreign countries and has no application to goods transported from one state to another. Territory of New Mexico ex rel McLean & Co. v. Denver, etc., R. Co., 203 U. S. 38, 27 S. Ct. 1, 51 L. Ed. 78; State v. Bartles Oil Co., 132 Minn. 138, 155 N. W. 1035, L. R. A. 1916D, 193. See, also, notes of decisions USCA Constitution, part 2, p. 210. The clear inference from the present record is that the gasoline in question originated outside the state of South Dakota but within the borders of the United States. In any event, there is an entire lack of any affirmative showing that appellant imported said gasoline from without the borders of the

United States. It is plain therefore that the provision of the Federal Constitution relied on can have no application whatever to the situation. .

Appellant also urges that any construction of the statute which would hold appellant for payment of the tax would render the statute obnoxious to that portion of section 5, art. 11, Constitution of South Dakota, which provides that "the property of * * * municipal corporations, both real and personal, shall be exempt from taxation." On this point it is sufficient to say that the tax in question does not purport to be, and is not in any sense, a tax upon property (Opinion of the Judges, 50 S. D. 324, 210 N. W. 186) and the constitutional provision here urged by its express terms has application only to the taxation of property, real or personal. Re McKennan's Estate, 25 S. D. 369, 126 N. W. 611, 33 L. R. A. (N. S.) 606, approved on this point but reversed on other grounds, 27 S. D. 136, 130 N. W. 33, 33 L. R. A. (N. S.) 620, Ann. Cas. 1913D, 745.

Independently of these constitutional arguments, appellant maintains that the statute upon proper interpretation thereof, does not require payment of motor-vehicle fuel tax by a municipal corporation in this state upon the facts presented by this case.

The statute in question, so far as is pertinent to the present discussion, may be substantially stated as follows: The first section defines the terms "motor vehicle" and "motor-vehicle fuel" (which of course includes gasoline), and then proceeds to define the term "dealer" in the following language: "(c) 'Dealers' means and includes any person or persons, firm association or corporation who receives from any source, motor-vehicle fuel in tank cars or other original containers and who unloads or breaks such original containers for the purpose of storing, selling, delivering or using all or any part of motor-vehicle fuel thus received, but does not include such motor-vehicle fuel as may be received by refineries or plants for the purpose of blending or compounding."

Section 2 of the act as amended by Laws 1927 (Sp. Sess.) c. 19, § 1, imposes the tax in the following language: "That a tax of four (4) cents per gallon, or fraction thereof, is hereby imposed on the sale of all motor-vehicle fuel used in this state for any purpose whatsoever, provided said tax shall be paid but once. Said

tax shall be computed upon all motor-vehicle fuel received by each dealer in this state and paid in a manner hereinafter provided."

Section 3 of the act as amended by Laws 1927 (Sp. Sess.) c. 19, § 2, provides that a dealer who sells the fuel in question instead of using it himself may pass the tax on to the purchaser. It reads as follows: "That every dealer paying such tax or being liable for the payment thereof, shall be entitled to charge and collect the sum of four (4) cents per gallon on such motor vehicle fuel sold by him or them, for any purpose whatsoever, as a part of the selling price thereof."

Sections 4 and 5 of the act provide for reports and payment of tax by dealers, and read as follows:

"Each and every dealer in motor-vehicle fuel, as defined in this act, who is now engaged or may hereafter engage in his own name or in the name of others, or by or through representatives or agents in this state in the sale or use of motor-vehicle fuel, shall, on or before the 25th day of the month succeeding the month in which this act shall become effective, render to the state auditor and state treasurer on forms prescribed, prepared and furnished by the state treasurer, a sworn statement of the number of gallons of motor-vehicle fuel in his possession in the State of South Dakota on the date this act became effective and all motor vehicle fuel thereafter received by him from any source whatsoever in said state of South Dakota, during the month preceding the month in which said report is made. Such statement shall be sworn to by an officer or agent in case of corporations, and by the owner, or agent in case of a firm, association or individual; and that on or before the 25th day of each succeeding month, every such dealer shall render to the state auditor and state treasurer a statement of all motor-vehicle fuel received by him from any source whatsoever in said State of South Dakota, during the preceding month. Such statement shall be sworn to in the same manner as hereinbefore provided."

"Section 5. That the amount of said tax as shown by the report heretofore provided for shall on or before 30 days from the date of the filing of said report be paid by the dealer to the state treasurer. The state treasurer shall forthwith receipt the dealer for the amount of the tax paid. It shall be the duty of the

state treasurer to promptly credit the `amount so received by him to a fund to be known as the gasoline tax fund, and shall distribute and apply such fund as hereinafter provided."

Section 10 of the act as amended by Laws 1927 ('Sp. Sess.) c. 19, § 4, provides for refund of the tax paid upon motor-vehicle fuel used for what we may term, "non-highway" purposes and reads as follows: "That any person or persons, firm or corporation who shall buy or use any motor vehicle fuel as defined in this act for the purpose of operating or propelling stationary gas engines, tractors used for agricultural purposes, motor boats, airplanes or aircraft, or who shall purchase or use any of such fuel for lighting, heating, cleaning or dyeing or other commercial use of the same except motor vehicles operated or intended to be operated in whole or in part upon any of the public highways of the State of South Dakota, on which motor fuel the tax imposed by this act has been paid, shall be reimbursed and repaid the amount of such tax paid by him upon presenting to the State Highway Commission on a form prescribed by the Director of Audits and Accounts, a sworn statement setting forth the total amount of such fuel purchases and used by such consumer other than in motor vehicles operated or intended to be operated upon any of the public highways of the State of South Dakota and the purpose for which said motor vehicles upon which he claims exemption from said tax was used, and such other information as the State Highway Commission shall require, and the said State Highway Commission upon the presentation of such sworn statement, shall cause to be repaid to such consumer from the taxes collected on motor vehicle fuels, the said taxes on fuels purchased or used than for motor vehicles as aforesaid; provided, that such applications for and refunds of such taxes shall be made not oftener than at the beginning of the quarter of each calendar year, and provided further, that such sworn statement in claim of exemption must be filed within one year of the date of the purchase of such fuel."

Viewing the provisions of the law as a whole, it seems quite apparent that the law is not, in the last analysis, a tax either upon motor-vehicle fuel or the sale thereof. Construing the various provisions together, including the refund provision, it appears that the tax in question is, in substance, a charge imposed by the

state for the privilege of operating motor vehicles upon the public highways of this state. The yardstick adopted to measure the extent of the use of the highways by the motor vehicle is not a mileage basis, but is the quantity of motor-vehicle fuel used in operating upon the highways. To prevent evasion and render the tax collectable as a practical matter, all motor-vehicle fuel coming into this state in original packages and sold or used in the state is taxed, and refund is made, with reference to so much of the fuel so taxed as is used for non-highway purposes. In the ordinary sense of the word, we understand a "dealer" in any product as one who buys the product in quantities and parcels it out by sale in lesser amounts. It is to be observed under this statute, however, that "dealer" specifiacally includes any person, firm, assocation, or corporation who receives from any source motor-vehicle fuel in original containers and unloads the same for purposes of storing, selling, delivering, or *using*. The necessity for this broad definition of the term "dealer" is entirely apparent. If the customary connotation of the word was not so enlarged for the purpose of this statute, every user of motor-vehicles upon our highways whose requirements were large enough to render such a device profitable would purchase his gasoline outside the state, have it come to the state in original packages, and, using it himself and not reselling it, would avoid the tax entirely. In other words, the only person who would pay the tax contemplated by the statute for operating motor vehicles upon our highways would be the small operator whose operations were so limited that he could not profitably buy his motor-vehicle fuel in original packages outside the state. It was to prevent exactly the sort of practice engaged in by appellant city that the word "dealer" in the statute was defined as comprehensively as it is. Appellant urges that the word "corporation" which appears as a part of the definition of "dealer" is not usually understood or interpreted to include public or municipal corporations, and therefore that appellant is not within the statutory definition of "dealer." We think we need not here concern ourselves with that question as a broad or general proposition. Looking at the statute as a whole, we fail to discern any legislative intention to exempt from payment of the tax in question any user of motor vehicles upon the public highways of this state, be such user a person, firm, private corporation, public corporation, municipality, or even a governmental sub-

division or department of the state itself. For the most part, motor-vehicle fuel used upon the highways of this state is purchased from dealers in this state. By the plain provisions of section 3 of the act as amended, it is contemplated that every gasoline dealer in this state (using the word here in the usual sense of one who sells gasoline) shall pay the tax upon his gasoline when he gets it and recoup himself from the purchaser when he sells it. There is no word in the statute excusing any one purchasing gasoline from a dealer in this state from paying to the dealer at the time of such purchase the tax which the dealer has paid, or for which the dealer has become liable. To put it concretely, if appellant city drove one of its trucks up to the Standard Oil station in Sioux Falls and bought ten gallons of gasoline upon which the Standard Oil Company as dealer had paid or become liable for tax, most assuredly appellant city would have to pay that tax to the Standard Oil Company. To give to the word "corporation" employed in the definition of "dealer" in the present statute the interpretation desired by appellant city would mean in actual operation simply this. That municipal corporations in this state which purchase their motor-vehicle fuel from dealers in this state would have to pay the tax thereon with such refund as they might show themselves entitled to. While on the other hand, municipal corporations, whose motor-vehicle fuel requirements were large enough to justify the practice, could buy their motor-vehicle fuel in original packages outside the state, bring it here, unload it and use it, and pay no tax whatever, whether it was used for highway or non-highway purposes. Considering the whole statute, we are compelled to the conclusion that appellant city falls within the statutory definition of the term "dealer" and is liable for tax payment as a dealer, and we are unable to find that any exemption accrues to the appellant city merely because of the fact that it is a municipal corporation. Generally on the point, and in support of the conclusion at which we have arrived, see City of Portland v. Kozer (1923) 108 Or. 375, 217 P. 833; Crockett v. Salt Lake County (1928) 72 Utah, 337, 270 P. 142, 60 A. L. R. 867; People v. City and County of Denver (1928) 84 Colo. 576, 272 P. 629; City of Louisville v. Cromwell (1930) 233 Ky. 828, 27 S. W. (2d) 377; Orange State Oil Co. v. Amos (1930) 100 Fla. 884, 130 So. 707; City of West Palm Beach v. Amos (1930) 100 Fla. 891, 130 So.

710; People v. Deep Rock Oil Corp. (1931) 343 Ill. 388, 175 N. E. 572. A contrary view is indicated in O'Berry v. Mecklenburg County (1930) 198 N. C. 357, 151 S. E. 880, 67 A. L. R. 1304. In this connection it is interesting to note a subsequent legislative change in North Carolina (section 24, ch. 145, Public Laws N. C. 1931) whereby, in substance, every "municipality, county, or other political subdivision or agency" is specifically made subject to the act.

Whether, if appellant city had paid the tax and made application for refund in the manner provided by the statute, it might have been entitled to refund as to part of the gasoline used, and if so as to what part, is a question which is in no manner involved in the present proceeding, and we express no opinion thereon.

The judgment appealed from is affirmed.

POLLEY, WARREN, and RUDOLPH, JJ., concur.

ROBERTS, J., disqualified and not sitting.